**Nothing contained herein shall constitute an offer, acceptance or a legally binding obligation of Glansaol Holdings Inc., et al. or any other party in interest and, the Plan will be subject to approval of the Bankruptcy Court and other customary conditions. The Plan is not an offer with respect to any securities. This is not a solicitation of acceptances or rejections of the Plan. Such a solicitation will only be made in compliance with applicable provisions of securities and/or bankruptcy laws.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| Glansaol Holdings Inc., et al.,[1] | : | Case No. 18-14102 (MEW) |
| | : | |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------x

## JOINT LIQUIDATING PLAN OF THE DEBTORS
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

**WILLKIE FARR & GALLAGHER LLP**
Brian S. Lennon
Daniel I. Forman
Andrew S. Mordkoff
787 Seventh Avenue
New York, New York 10019-6099
(212) 728-8000

*Counsel for the Debtors and Debtors in Possession*


Dated:    March 1, 2019

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal taxpayer identification number are as follows: Clark's Botanicals, Inc. (0754); Glansaol Holdings Inc. (9485); Glansaol LLC (2012); Glansaol Management LLC (6879); Julep Beauty, Inc. (7984); Laura Geller Beauty, LLC (1706); Laura Geller Brands, LLC (7428); and Laura Geller Holdings, LLC (7388). The Debtors' executive headquarters are located at 575 Lexington Avenue, New York, NY 10022.

**Table of Contents**

[TO COME]

**LIQUIDATING PLAN OF THE DEBTORS**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Glansaol Holdings Inc., and each of its debtor affiliates listed on Exhibit A hereto, as debtors and debtors in possession, propose the following liquidating plan under section 1121(a) of title 11 of the United States Code:

ARTICLE I

**DEFINITIONS AND CONSTRUCTION OF TERMS**

A.    <u>Definitions</u>.  As used herein, the following terms have the respective meanings specified below (such meanings to be equally applicable to both the singular and plural):

1.01.    <u>503(b)(9) Claims</u> means Claims that have been timely and properly filed prior to the Bar Date and that are granted administrative expense priority treatment pursuant to section 503(b)(9) of the Bankruptcy Code.

1.02.    <u>Administrative Bar Date</u> has the meaning set forth in Section 2.03 of this Plan.

1.03.    <u>Administrative Expense Claim</u> means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of the kind specified in section 503(b) of the Bankruptcy Code, and entitled to priority pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code (other than a DIP Claim, Fee Claim or U.S. Trustee Fees) for the period from the Petition Date to the Effective Date, including, without limitation: (a) any actual and necessary costs and expenses of preserving the Estates, any actual and necessary costs and expenses of operating the Debtors' business, and (b) any indebtedness or obligations incurred or assumed by the Debtors during the Chapter 11 Cases.

1.04.    <u>Allocation Schedule</u> means the schedule attached to this Plan as Exhibit B providing the proposed allocation of Available Cash among each of the Debtor entities.

1.05.    <u>Allowed</u> means any Claim (or portion thereof) (a) either (i) proof of which has been timely filed with the Bankruptcy Court or has been deemed timely filed by a Final Order; or (ii) if not so filed, scheduled by the Debtors (as the Schedules have been or may be amended from time to time in accordance with Bankruptcy Rule 1009) other than as disputed, contingent or unliquidated; and (b) allowed by a Final Order, by this Plan, or because no party in interest timely has filed an objection, including an Omnibus Claims Objection, filed a motion to equitably subordinate, or otherwise sought to limit recovery or alter priority on such Claim; <u>provided</u>, <u>however</u>, that any Claim listed in the Schedules that has been paid by the Debtors (x) after the Petition Date pursuant to order of the Bankruptcy Court, (y) before the Petition Date and was inadvertently listed in the Schedules, or (z) paid by the Debtors or the Bankruptcy Court-approved purchaser pursuant to a Bankruptcy Court-approved purchase agreement or order approving the sale of all or substantially all of the Debtors' assets during the course of these Chapter 11 Cases as an assumed liability, shall not be considered an Allowed Claim. Notwithstanding anything herein to the contrary, Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered

"Allowed Claims" hereunder. Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under this Plan, include interest on such Administrative Expense Claim or Claim from and after the Petition Date.

1.06.    Allowed [Class Designation/Type] Claim/Interest means a Claim or Interest that is Allowed in a specified class or of a specified type.

1.07.    Allowed Secured Claim means an Allowed Prepetition Secured Lender Claim and/or an Allowed Other Secured Claim, as the context requires, in each case, to the extent such Claim is secured by Collateral.

1.08.    Asset Sale Closing Date means February 6, 2019.

1.09.    Available Cash shall have the meaning given to such term in Section 7.01.

1.10.    Avoidance Actions means any avoidance, equitable subordination or recovery actions or proceedings under chapter 5 of the Bankruptcy Code (e.g., 502(d), 510, 542 through 551, and 553) or applicable state law.

1.11.    Ballot means the form distributed to each holder of an impaired Claim that is entitled to vote to accept or reject this Plan, on which is to be indicated acceptance or rejection of this Plan.

1.12.    Bankruptcy Code means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

1.13.    Bankruptcy Court means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases.

1.14.    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and the Local Rules of the Bankruptcy Court.

1.15.    Bar Date means the applicable deadline for filing proofs of Claim, including, without limitation, Claims arising prior to the Petition Date (including 503(b)(9) Claims) and Administrative Expense Claims, as established by order of the Bankruptcy Court [Docket No. 150] or under this Plan.

1.16.    Business Day means any day other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

1.17.    Cash means legal tender of the United States of America and equivalents thereof.

1.18.    Causes of Action means, without limitation, any and all actions, causes of action, Avoidance Actions, controversies, liabilities, obligations, rights, suits, damages, judgments, Claims, and demands whatsoever owned by the Debtors, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or

undisputed, secured or unsecured, whether assertable directly, indirectly, derivatively or in any representative or other capacity, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act, failure to act, error, omission, transaction, occurrence or other event arising or occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

1.19.   Chapter 11 Cases means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors, which cases are jointly administered under case caption Glansaol Holdings Inc., et al., Chapter 11, Case No. 18-14102 (MEW) and is currently pending before the Bankruptcy Court.

1.20.   Claim means any "claim" (as defined in section 101(5) of the Bankruptcy Code) against the Debtors, including, without limitation, any Claim arising after the Petition Date.

1.21.   Claims Agent means Omni Management Group Inc., or any other entity approved by the Bankruptcy Court to act as the Debtors' claims and noticing agent pursuant to 28 U.S.C. § 156(c).

1.22.   Class means each category of Claims or Interests established under Article III of this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.23.   Collateral means any property or interest in property of the Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

1.24.   Combined Hearing means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Bankruptcy Code section 1129 and the approval of the Disclosure Statement in accordance with Bankruptcy Code section 1125, as such hearing may be adjourned or continued from time to time.

1.25.   Committee means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases on January 3, 2019 pursuant to section 1102 of the Bankruptcy Code, as the same may be reconstituted from time to time.

1.26.   Confirmation Date means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.27.   Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

1.28.   Debtor(s) means, individually or collectively, as the context requires, the entities listed on Exhibit A annexed hereto prior to the Effective Date, and the Liquidating Trustee from and after the Effective Date, as the context requires.

1.29.   DIP Administrative Agent means SunTrust Bank, solely in its capacity as administrative agent under the DIP Credit Agreement.

1.30.     DIP Claim means a Claim of the DIP Administrative Agent and/or DIP Lenders in respect of the obligations of the Debtors arising under the DIP Credit Agreement and DIP Order.

1.31.     DIP Credit Agreement means that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dates as of December 20, 2018, by and among the Debtors, the DIP Administrative Agent and the DIP Lenders, as the same may have been modified and amended from time to time, in accordance with the terms thereof.

1.32.     DIP Facility means the senior, secured superpriority debtor-in-possession asset-based revolving credit facility provided to the Debtors pursuant to the DIP Credit Agreement, by and among the Debtors, the DIP Administrative Agent and the DIP Lenders, as the same may have been modified and amended from time to time, in accordance with the terms thereof.

1.33.     DIP Lender means SunTrust Bank, solely in its capacity as lender under the DIP Credit Agreement.

1.34.     DIP Order means the order or orders of the Bankruptcy Court authorizing and approving the Debtors' entry into the DIP Credit Agreement and the DIP Facility.

1.35.     Disallowed means a finding of the Bankruptcy Court in a Final Order, which may include one or more orders granting one or more Omnibus Claims Objections, or provision in the Plan providing that a Disputed Claim shall not be an Allowed Claim.

1.36.     Disbursing Agent means, for purposes of making distributions under the Plan, the Debtors or a designee thereof (including the Liquidating Trustee).

1.37.     Disclosure Statement means the disclosure statement relating to this Plan, as such disclosure statement may be amended, modified or supplemented from time to time (including, without limitation, all exhibits and schedules thereto).

1.38.     Disclosure Statement Order means the order of the Bankruptcy Court approving the Disclosure Statement as having adequate information in accordance with section 1125 of the Bankruptcy Code.

1.39.     Disputed means, as of any relevant date, any Claim or Interest, or any portion thereof: (a) that is not an Allowed Claim, Allowed Interest, Disallowed Claim or Disallowed Interest as of the relevant date; or (b) for which a proof of Claim or Interest has been timely filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtors or any party in interest has interposed a timely objection including, an Omnibus Claims Objection or request for estimation, which objection, or request for estimation has not been withdrawn or determined by a Final Order as of the relevant date.

1.40.     Distribution means a distribution of Cash or other property pursuant to this Plan.

1.41.     Distribution Date means any date that is: (a) the Effective Date; (b) the Initial Distribution Date; (c) any Interim Distribution Date; or (d) the Final Distribution Date, as the context requires.

1.42.    <u>Distribution Record Date</u> means the Confirmation Date or such other later date as shall be established by the Bankruptcy Court in the Confirmation Order.

1.43.    <u>Effective Date</u> means the first Business Day as soon as reasonably practicable after all conditions to the occurrence of the Effective Date set forth in Section 11.01 hereof have been satisfied or waived, and no stay of the Confirmation Order is in effect.

1.44.    <u>Estate</u> means the estate created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

1.45.    <u>Estimation Order</u> means an order or orders of the Bankruptcy Court estimating for voting and/or distribution purposes (under section 502(c) of the Bankruptcy Code) the allowed amount of any Claim.  The defined term Estimation Order includes the Confirmation Order if the Confirmation Order grants the same relief that would have been granted in a separate Estimation Order.

1.46.    <u>Existing Interests</u> means the Interests in the Debtors outstanding immediately prior to the Effective Date.

1.47.    <u>Fee Claim</u> means a Claim by a Professional Person for compensation, indemnification or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103(a) of the Bankruptcy Code in connection with the Chapter 11 Cases, including, without limitation, in connection with the final fee applications of such Professional Person.

1.48.    <u>Final Distribution</u> means the distribution to be made by the Disbursing Agent after the Debtors' assets have been reduced to Cash, abandoned or otherwise disposed of, and the Debtors have resolved all Disputed Claims and paid all Fee Claims approved by the Bankruptcy Court by Final Order.

1.49.    <u>Final Distribution Date</u> means the date upon which the Final Distribution occurs.

1.50.    <u>Final DIP Order</u> means the Final Order authorizing the Debtors to, among other things, obtain postpetition financing  pursuant to the DIP Credit Agreement and DIP Facility [Docket No. 143].

1.51.    <u>Final Order</u> means an order or judgment, as entered on the docket of the applicable court that has not been reversed, stayed, modified or amended, and as to which: (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely-filed appeal or petition for review, rehearing, remand or certiorari is pending; or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; <u>provided</u>, <u>however</u>, that the possibility that a motion under Rule 50 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Civil Procedure or Bankruptcy Rules, may be filed relating to such order, ruling or judgment shall not cause such order, ruling or judgment not to be a Final Order; <u>provided</u>, <u>further</u>, that no order or judgment shall fail to be a Final Order solely because of the susceptibility of a Claim to a challenge under section 502(j) of the Bankruptcy Code.

1.52.    General Unsecured Claim means any claim against the Debtors, other than: (a) a Prepetition Secured Lender Claim; (b) an Other Secured Claim; (c) a DIP Claim; (d) an Administrative Expense Claim; (e) a Fee Claim; (f) a Priority Tax Claim; (g) U.S. Trustee Fees; or (h) a Priority Non-Tax Claim, and shall not include Claims that are not Allowed or are released, whether by operation of law or pursuant to order of the Bankruptcy Court, written release or settlement, the provisions of the Plan or otherwise.

1.53.    Initial Distribution Date means, except as set forth in this Plan, the first Business Day twenty (20) days after the Effective Date, or such longer or shorter period as may be reasonably determined by the Debtors, to make initial Distributions under this Plan.

1.54.    Interest means the interest (whether legal, equitable, contractual or other rights) of any holders of any class of equity securities of any Debtor represented by shares of common or preferred stock or other instruments evidencing an ownership interest in any of the Debtors, whether or not certificated, transferable, voting or denominated "stock" or a similar security, and any Claim or Cause of Action related to or arising from the foregoing, or any option, warrant or right, contractual or otherwise, to acquire any such interest.

1.55.    Interim Distribution Date means any date, other than the Final Distribution Date, after the Initial Distribution Date on which the Debtors determine that an interim Distribution should be made to holders of Allowed Claims in light of, inter alia, resolutions of Disputed Claims and the administrative costs of such a Distribution.

1.56.    Jane Park Promissory Note means that certain promissory note dated as of December 20, 2016 by and between Debtor Glansaol LLC, and Jane Park.

1.57.    Lien shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

1.58.    Liquidating Trust means the Entity described in Section 7.01 of this Plan that will succeed to all of the assets and liabilities of the Debtors' Estates, subject to the terms of the Plan as of the Effective Date.

1.59.    Liquidating Trust Agreement means that certain agreement establishing and delineating the terms of the Liquidating Trust, substantially in the form to be filed as a part of the Plan Supplement.

1.60.    Liquidating Trust Fund shall have the meaning given to such term in Section 7.01 of this Plan.

1.61.    Liquidating Trustee means Emerald Capital Advisors Corp., or such other party as appointed by the Debtors in consultation with the Committee.

1.62.    Net Cash Proceeds means the Cash purchase price received by the Debtors, pursuant to the Bankruptcy Court approved-asset purchase agreement during the course of these Chapter 11 Cases, net of all costs and expenses deducted therefrom.

1.63.    <u>Omnibus Claims Objection</u> means one or more omnibus objections to Claims pursuant to Bankruptcy Rule 3007 or other applicable law objecting to or otherwise reconciling Claims filed against the Debtors.

1.64.    <u>Other Secured Claims</u> means any Secured Claim against a Debtor other than a Prepetition Secured Lender Claim.

1.65.    <u>Person</u> means any individual, corporation, partnership, association, indenture trustee, limited liability company, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, Interest holder or any other entity or organization of whatever nature.

1.66.    <u>Petition Date</u> means December 19, 2018.

1.67.    <u>Plan</u> means this chapter 11 liquidating plan, including the Plan Supplement and all exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time.

1.68.    <u>Plan Documents</u> means those documents necessary to effectuate this Plan following entry of the Confirmation Order, including the Liquidating Trust Agreement, and the Wind Down Budget, which shall be contained in the Plan Supplement (also which shall be subject to revision and modification prior to the Effective Date).

1.69.    <u>Plan Supplement</u> means the supplemental appendix to this Plan, to be filed no later than five (5) Business Days prior to the deadline for Ballots to be received in connection with voting to accept or reject the Plan, which will contain, among other things, draft forms, signed copies, or summaries of material terms, as the case may be, of the Plan Documents, each of which shall be subject to revision and modification prior to the Effective Date.

1.70.    <u>Preference Action</u> means any avoidance or recovery actions or proceedings under chapter 547, 550 through 553 of the Bankruptcy Code or applicable state law.

1.71.    <u>Prepetition Secured Lender Claim</u> means any Claim arising under the Prepetition Secured Credit Agreement.

1.72.    <u>Prepetition Secured Credit Agreement</u> means that certain Credit Agreement dated as of April 21, 2017(as amended, restated, supplemented or otherwise modified).

1.73.    <u>Prepetition Secured Loan</u> means the loan made in connection with the senior secured asset-based revolving credit facility pursuant to the Prepetition Secured Credit Agreement in the aggregate principal amount of $20,000,000.

1.74.    <u>Priority Non-Tax Claim</u> means any Claim, other than an Administrative Expense Claim, a DIP Claim, a Fee Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

1.75.    Priority Tax Claim means any Claim of a governmental unit (as defined in section 101(27) of the Bankruptcy Code) of the kind specified in Bankruptcy Code sections 502(i) and 507(a)(8).

1.76.    Professional Expense Escrow means the segregated account maintained by the Debtors funded pursuant to the terms of the Final DIP Order.

1.77.    Professional Persons means all Persons retained by order of the Bankruptcy Court in connection with the Chapter 11 Cases, pursuant to sections 327, 328, 330 or 1103 of the Bankruptcy Code.

1.78.    Pro Rata means proportionate, so that, for example, the ratio of (a) the amount of all consideration distributed on account of an Allowed Claim against a particular Debtor to (b) the amount of such Allowed Claim against such Debtor is the same as the ratio of (a) the amount of all consideration distributed on account of all Allowed Claims against such Debtor in the Class in which such Claim is classified to (b) the amount of all Allowed Claims in such Class against such Debtor.

1.79.    Released Parties means, collectively, (a) the Debtors and their current and former directors, officers, agents, employees, shareholders, members, advisors and professionals (including any attorneys, consultants, financial advisors, investment bankers and other professionals retained by such Persons, including Willkie Farr & Gallagher LLP and Emerald Capital Advisor Corp.), together with their respective successors and assigns, each solely in its capacity as such; (b) the Committee and its members and advisors and professionals (including any attorneys, consultants, financial advisors, investment bankers and other professionals), together with their respective successors and assigns; (c) the DIP Administrative Agent and the DIP Lenders, together with their respective successors and assigns; (d) the Liquidating Trustee; (e) the Liquidating Trust; and (f) the Prepetition Secured Lenders together with their respective successors and assigns, each solely in its capacity as such; provided, however, that such attorneys and professional advisors shall only include those that provided services related to the Chapter 11 Cases and the transactions contemplated by the Plan; provided, further, that no Person shall be a Released Party if it elects to opt out of the releases provided for in Article XII of the Plan in its Ballot.

1.80.    Sale Proceeds means all proceeds from the Sale Transaction.

1.81.    Sale Transaction means the sale of all or substantially all of the Debtors' assets approved by order of the Bankruptcy Court [Docket No. 165].

1.82.    Schedules means the schedules of assets and liabilities, the lists of holders of Interests, and the statements of financial affairs filed by each of the Debtors pursuant to Bankruptcy Code section 521 and Bankruptcy Rule 1007, and all amendments and modifications thereto filed with the Bankruptcy Court through and including the Confirmation Date.

1.83.    Secured Claim means a Claim, either as set forth in this Plan, as agreed to by the holder of such Claim and the Debtors or as determined by a Final Order in accordance with sections 506(a) or 1111(b) of the Bankruptcy Code: (a) that is secured by a valid, perfected and enforceable Lien on Collateral that is not subject to avoidance under bankruptcy or

nonbankruptcy law, to the extent of the value of the Claim holder's interest in such Collateral as of the relevant date; or (b) to the extent that the holder thereof has a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

1.84.    U.S. Trustee means the United States Trustee for the Southern District of New York.

1.85.    U.S. Trustee Fees means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

1.86.    Wind Down means the work necessary to administer the Plan, liquidate the Debtors' remaining assets, collect or recover the Debtors' assets and claims, prosecute claims and Causes of Action and pay the expenses and costs set forth in the Wind Down Budget.

1.87.    Wind Down Budget means a budget prepared by the Debtors to be included in the Plan Supplement (or such later date as permitted by the Court) and which may be amended from time to time after entry of the Confirmation Order, and shall estimate the funds necessary to administer the Plan, continue the Debtors' Wind Down, and otherwise unwind the Debtors' affairs, including the costs of holding and liquidating the Estates' remaining property, if any, objecting to Claims, making the Distributions required by the Plan, prosecuting Claims and Causes of Action, if any, that may be held by the Estates against third parties that are not released, waived or transferred pursuant to the Plan (including pursuant to Article XII) or otherwise, paying taxes, filing tax returns, paying the Liquidating Trustee Professional Fees, funding payroll and other employee costs, providing for the purchase of errors and omissions insurance and/or other forms of indemnification for the Liquidating Trustee, and creating appropriate reserves for all such items and other costs of administering the Plan, the Estate and the Debtors.

B.    Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained therein. Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan. The word "including" as used in this Plan means "including, without limitation" regardless of whether so specified. Any reference in this Plan to a contract, instrument, release, indenture or other agreement or documents being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented. Subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, releases or other agreements or documents entered into in connection with this Plan,

the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules. The captions and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns.

C.    Appendices and Plan Documents.

All Plan Documents and appendices to the Plan are incorporated into the Plan by reference and are a part of the Plan as if set forth in full herein.  The documents contained in the exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  Holders of Claims and Interests may inspect copies of the Plan Documents, once filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours, or via the Claims Agent's website at https://omnimgt.com/glansaol, or obtain a copy of the Plan Documents by a written request sent to the Claims Agent at the following address:

Glansaol Holdings Inc., et. al. Claims
Processing c/o Omni Management Group
5955 De Soto Avenue, Suite 100 Woodland
Hills, CA 91367

ARTICLE II

**DIP CLAIMS, ADMINISTRATIVE EXPENSE CLAIMS,
FEE CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS**

All Claims and Interests, except DIP Claims, Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims, are placed in the Classes set forth in Article III below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Claims, Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims of the Debtors have not been classified, and the holders thereof are not entitled to vote on this Plan.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

A Claim or Interest also is placed in a particular Class for all purposes, including voting, confirmation and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code.  However, a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

2.01.    DIP Claims.  In full satisfaction, settlement and release of the Allowed DIP Claims, on the Asset Sale Closing Date the holders of Allowed DIP Claims were paid in full from Sale Proceeds resulting from the Sale Transaction.  Upon payment in full of the Allowed DIP Claims, all Liens and security interests granted to secure Allowed DIP Claims against the Debtors in the Chapter 11 Cases were terminated and have no further force or effect.

2.02.    _Administrative Expense Claims_.  Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date an Administrative Expense Claim becomes an Allowed Claim, the holder of such Allowed Administrative Expense Claim shall receive from the Debtors Cash in an amount equal to such Allowed Claim; _provided_, _however_, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as debtors in possession, shall be paid by the Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing or other documents relating to, such liabilities.

2.03.    _Time for Filing Administrative Expense Claims_.  The holder of an Administrative Expense Claim, other than:

(a)    a DIP Claim;

(b)    a Fee Claim;

(c)    an Administrative Expense Claim that has been Allowed on or before the Effective Date;

(d)    an Administrative Expense Claim held by an officer, director or employee of any of the Debtors employed as of the Petition Date for indemnification, contribution or advancement of expenses pursuant to: (A) any Debtor's certificate of incorporation, by-laws or similar organizational document, or (B) any indemnification or contribution agreement approved by the Bankruptcy Court;

(e)    an Administrative Expense Claim arising, in the ordinary course of business, out of the employment by any of the Debtors of an individual from and after the Petition Date, but only to the extent that such Administrative Expense Claim is solely for outstanding wages, commissions, accrued benefits or reimbursement of business expenses; or

(f)    U.S. Trustee Fees,

must file with the Bankruptcy Court and serve on the Debtors, the Claims Agent and the Office of the United States Trustee, **notice of such Administrative Expense Claim so as to be received by 5:00 p.m. prevailing Eastern time on the date that is thirty (30) days after service of notice of occurrence of the Effective Date (the "Administrative Bar Date")**.  Such notice must include at a minimum: (i) the name of the applicable Debtor that is purported to be liable for the Administrative Expenses Claim; (ii) the name of the holder of the Administrative Expense Claim; (iii) the amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim.  **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED AND RELEASED.**

2.04.   Fee Claims.  All Professional Persons seeking allowance by the Bankruptcy Court of a Fee Claim shall: (i) file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date that is forty-five (45) days after the Effective Date or such other date as may be fixed by the Bankruptcy Court; and (ii) if granted such an award by the Bankruptcy Court, be paid in full in Cash such amount as awarded by the Bankruptcy Court (A) no later than five (5) Business Days after the date an order is entered with respect to such award or (B) upon such other terms as may be mutually agreed upon between such holder of a Fee Claim and the Debtors.  On the Effective Date, the Debtors shall deposit Cash in the Professional Expense Escrow in an amount equal to accrued but unpaid Fee Claims as of the Effective Date plus the reasonable, good faith estimate of post-Effective Date Fee Claims to be incurred by each Professional Person (such estimates to be provided to the Debtors at least two (2) Business Days prior to the Effective Date), which Cash shall be used, until all Allowed Fee Claims have been paid in full, solely for the payment of Allowed Fee Claims.  Objections to Fee Claims, if any, must be filed and served pursuant to the procedures set forth in the Confirmation Order no later than sixty-five (65) days after the Effective Date.  To the extent the Cash in the Professional Expense Escrow exceeds the amount of the Allowed Fee Claims, such excess Cash shall become the sole and exclusive property of the Liquidating Trustee.  All Professional Persons seeking allowance by the Bankruptcy Court of a Fee Claim shall be paid in full in Cash in such amounts as are approved by the Bankruptcy Court: (i) upon the later of (x) the Effective Date, and (y) fourteen (14) calendar days after the date upon which the order relating to the allowance of any such Fee Claim is entered, or (ii) upon such other terms as may be mutually agreed upon between the holder of such Fee Claim and the Liquidating Trustee.

2.05.   U.S. Trustee Fees.  The Debtors shall pay all outstanding U.S. Trustee Fees of the Debtors on an ongoing basis on the later of: (i) the Effective Date; and (ii) the date such U.S. Trustee Fees become due, until such time as a final decree is entered closing the Chapter 11 Cases, the Chapter 11 Cases are converted or dismissed, or the Bankruptcy Court orders otherwise.

2.06.   Priority Tax Claims.  Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtors either: (i) on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Claim, or (ii) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim (with any interest to which the holder of such Priority Tax Claim may be entitled calculated in accordance with section 511 of the Bankruptcy Code); provided, however, that all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as they become due.

ARTICLE III

**CLASSIFICATION OF CLAIMS AND INTERESTS**

This Plan constitutes a separate chapter 11 plan for each Debtor. Except for the Claims addressed in Article II (or as otherwise set forth herein), all Claims against and Interests in a particular Debtor are placed in Classes for each of the Debtors.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Expense Claims, DIP Claims, U.S. Trustee Fees, Priority Tax Claims and Fee Claims as described in Article II:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Prepetition Secured Lender Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 2 | Other Secured Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 3 | Priority Non-Tax Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 4 | General Unsecured Claims | Impaired | Yes (entitled to vote) |
| Class 5 | Existing Interests | Impaired | Yes (entitled to vote) |

If a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Combined Hearing.  If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

ARTICLE IV

**TREATMENT OF CLAIMS AND INTERESTS**

4.01.    CLASS 1 – PREPETITION SECURED LENDER CLAIMS.

(a)    Impairment and Voting.  Class 1 is unimpaired by the Plan.  Each holder of a Prepetition Secured Lender Claim is not entitled to vote to accept or reject the Plan because it is unimpaired and conclusively presumed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(b)    Treatment.  The legal, equitable and contractual rights of the holder(s) of Prepetition Secured Lender Claims are unaltered by this Plan.  Except to the extent that a holder of an Allowed Prepetition Secured Lender Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, on the Effective Date each holder of an

Allowed Prepetition Secured Lender Claim shall receive Cash in an amount equal to such Allowed Prepetition Secured Lender Claim in full satisfaction, settlement, release and discharge of, and in exchange for, such Claim. Notwithstanding anything herein to the contrary, upon the full payment or other satisfaction of such obligations, the Liens securing such Allowed Prepetition Secured Lender Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

 4.02. <u>CLASS 2 – OTHER SECURED CLAIMS</u>.

  (a) <u>Impairment and Voting</u>. Class 2 is unimpaired by the Plan. Each holder of an Allowed Other Secured Claim is not entitled to vote to accept or reject the Plan because it is unimpaired and conclusively presumed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

  (b) <u>Treatment</u>. The legal, equitable and contractual rights of the holder(s) of Other Secured Claims are unaltered by this Plan. Except to the extent that a holder of an Allowed Other Secured Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, on the applicable Distribution Date each holder of an Allowed Other Secured Claim shall receive at the election of the Debtors on or before, the later of the Effective Date and thirty (30) days after the date on which a Class 2 Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter, (i) Cash in an amount equal to such Allowed Other Secured Claim, (ii) the collateral securing such Allowed Other Secured Claim, or (iii) such other treatment that will render such Allowed Other Secured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code. Notwithstanding anything herein to the contrary, upon the full payment or other satisfaction of such obligations, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

  (c) <u>Separate Classification of Secured Claims</u>. Although all Other Secured Claims have been placed in one Class for purposes of nomenclature, each Other Secured Claim, to the extent secured by a Lien on Collateral different than that securing any other Secured Claims, shall be treated as being in a separate sub-Class for the purpose of voting on the Plan and receiving Distributions.

 4.03. <u>CLASS 3 - PRIORITY NON-TAX CLAIMS</u>.

  (a) <u>Impairment and Voting</u>. Class 3 is unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim is not entitled to vote to accept or reject the Plan because it is unimpaired and conclusively presumed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

  (b) <u>Treatment</u>. The legal, equitable and contractual rights of the holders of Priority Non-Tax Claims are unaltered by this Plan. Except to the extent that a holder of an Allowed Priority Non-Tax Claim has been paid by the Debtors prior to the Effective Date or

agrees to a different treatment, each holder of an Allowed Priority Non-Tax Claim, shall receive (i) Cash in an amount equal to such Allowed Priority Non-Tax Claim, or (ii) such other treatment that will render such Allowed Priority Non-Tax Claim unimpaired pursuant to section 1124 of the Bankruptcy Code on the later of the Effective Date and the date such Allowed Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable.

4.04.   CLASS 4 - GENERAL UNSECURED CLAIMS.

(a)    Impairment and Voting.  Class 4 is impaired by the Plan.  Each holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.  Except to the extent that a holder of an Allowed General Unsecured Claim has been paid by the Debtors prior to the Effective Date or agrees to a different treatment, each holder of an Allowed General Unsecured Claim shall receive, subject to the terms of the Plan and in full satisfaction, settlement, and release of, and in exchange for such Allowed General Unsecured Claim, its Pro Rata share of the Available Cash provided, however, that each holder of an Allowed General Unsecured Claim shall not receive an amount that exceeds 100% of the amount of such Allowed General Unsecured Claim.

4.05.   CLASS 5 – EXISTING INTERESTS.

(a)    Impairment and Voting.  Class 5 is impaired by the Plan.  Each holder of an Existing Interest is entitled to vote to accept or reject the Plan.

(b)    Treatment.  On or after the Effective Date, each holder of an Existing Interest, to the extent that all Allowed General Unsecured Claims have been satisfied in full against such Debtor, shall receive, subject to the terms of the Plan, its Pro Rata share of any remaining Available Cash.

ARTICLE V

**ACCEPTANCE OR REJECTION OF
THE PLAN; EFFECT OF REJECTION BY ONE
OR MORE CLASSES OF CLAIMS OR INTERESTS**

5.01.   Class Acceptance Requirement.  A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in dollar amount of the Allowed Claims in such Class and more than one-half (1/2) in number of holders of such Claims that have voted on the Plan. Pursuant to Section 1126(d) of the Bankruptcy Code, acceptance of the Plan by Class 5 holders of Existing Interests requires only holders of two-thirds (2/3) in dollar amount vote to accept the Plan.

5.02.   Tabulation of Votes on a Non-Consolidated Basis.  All votes on the Plan shall be tabulated on a non-consolidated basis by Class and by Debtor for the purpose of determining whether the Plan satisfied sections 1129(a)(8) and/or 1129(a)(10) of the Bankruptcy.

5.03.   Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown".  With respect to any rejecting Class of Claims or Interests, the Debtors will

request confirmation of this Plan, as it may be modified and amended from time to time, under section 1129(b) of the Bankruptcy Code with respect to such Classes. Subject to Section 14.06 of the Plan, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan or any Plan Document in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

5.04. <u>Elimination of Vacant Classes</u>. Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Combined Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

5.05. <u>Voting Classes; Presumed Acceptance by Non-Voting Classes</u>. If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the holders of such Claims or Interests in such Class.

ARTICLE VI

**<u>IMPLEMENTATION OF THE PLAN</u>**

6.01. <u>Non-substantive Consolidation</u>. The Plan is a joint chapter 11 plan for each of the Debtors, with the Plan for each Debtor being non-severable and mutually dependent on the Plan for each other Debtor. The Plan does not provide for substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for purposes hereof. Except as specifically set forth herein, nothing in this Plan shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any claim against any other Debtor. Notwithstanding the foregoing, solely for Distribution purposes, holders of Allowed General Unsecured Claims shall be entitled to a single Claim with respect to any particular debt owed.

6.02. <u>Management of Debtors' Assets</u>. After the Effective Date, all property of the Debtors shall be managed and administered by the Liquidating Trustee in a manner reasonably designed to maximize values. If the Liquidating Trustee in its discretion decides not to sell any non-Cash property or if such property cannot, in the Liquidating Trustee's judgment, be sold in a commercially reasonable manner prior to the Final Distribution Date, the Liquidating Trustee shall have the right to abandon or otherwise dispose of such property in their business judgment. Absent willful misconduct or fraud in connection therewith, no party in interest shall have a cause of action against the Liquidating Trustee, the Liquidating Trust, the Debtors or each of their respective directors, officers, employees, consultants, trustees or professionals arising from or related to the disposition of non-Cash property in accordance with this Section.

6.03. <u>Charter and Bylaw Amendments</u>.

(a) The charter, bylaws and/or other constituent documents and agreements of the Debtors shall be revised as necessary and appropriate to comport with the terms of the Plan.

(b)    Any action under the Plan to be taken by or required of the Debtors, including the adoption or amendment of certificates of incorporation and bylaws, the issuance of instruments, and the selection of officers or directors, shall be authorized and approved in all respects, without any requirement of further action by any of the Debtors' equityholders, sole members, boards of directors or boards of managers, or similar body, as applicable.

6.04.    <u>Cancellation of Existing Securities and Agreements</u>.  Except for the purpose of evidencing a right to distribution under this Plan, on the Effective Date, any document, agreement or instrument evidencing any Claim or Interest, shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order or rule and the obligations of the Debtors under such documents, agreements or instruments evidencing such Claims and Interests, as the case may be, shall be deemed extinguished.

6.05.    <u>Cancellation of Existing Security Interests</u>.  Upon the full payment or other satisfaction of an Allowed Secured Claim, or promptly thereafter, the holder of such Allowed Secured Claim shall deliver to the Debtors any Collateral or other property of the Debtors held by such holder, and any termination statements, instruments of satisfactions or releases of all security interests with respect to its Allowed Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens or lis pendens.

6.06.    <u>Approval of Plan Documents</u>.  The solicitation of votes on the Plan shall be deemed a solicitation for the approval of the Plan Documents and all transactions contemplated hereunder.  Entry of the Confirmation Order shall constitute approval of the Plan Documents and such transactions.  On the Effective Date, the Debtors shall be authorized to enter into, file, execute and/or deliver each of the Plan Documents and any other agreement or instrument issued in connection with any Plan Document without the necessity of any further corporate, board or shareholder action.

6.07.    <u>Comprehensive Settlement of Claims and Controversies</u>.  Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all Claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to this Plan on account of any Allowed Claim or Allowed Interest.  The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are: (a) in the best interest of the Debtors and their respective Estates and property, and of holders of Claims or Interests; and (b) fair, equitable and reasonable.  If the Effective Date does not occur, the settlements set forth herein shall be deemed to have been withdrawn without prejudice to the respective positions of the parties.

6.08.    <u>Vesting of the Debtors' Assets as of the Effective Date</u>. On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property, assets and interests of the Estates shall vest in, and be held in the name of, the Liquidating Trust, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as otherwise provided herein or in the Plan or the Confirmation Order including with respect to the rights to receive any Distribution hereunder.

ARTICLE VII

**LIQUIDATING TRUSTEE**

7.01.   The Liquidating Trust.

(a)     On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purposes of (a) administering the Liquidating Trust Fund (b) resolving all Disputed Claims, (c) pursuing Causes of Actions, and (d) making all Distributions contemplated by this Plan for the winding down of the Debtors' affairs.  The Liquidating Trust will be established for the sole purpose of liquidating, winding down the Debtors' affairs, and distributing the Liquidating Trust Fund, in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

(b)     On the Effective Date, a fund established in accordance with the terms of the Wind Down Budget and Liquidating Trust Agreement, to fund the winding-down of the Debtors' affairs, (including all costs and expenses of the Liquidating Trustee as provided under the Liquidating Trust Agreement), and the other items reflected in the Wind Down Budget (the "Liquidating Trust Fund") shall vest automatically in the Liquidating Trust.  The Liquidating Trust Fund will be treated for tax purposes as being transferred by the Debtors to the beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the beneficiaries to the Liquidating Trust in exchange for their beneficial interests in the Liquidating Trust.  Upon the transfer of the Liquidating Trust Fund, the Liquidating Trust shall succeed to all of the Debtors' rights, title and interest in the Liquidating Trust Fund, and the Debtors will have no further interest in or with respect to the Liquidating Trust Fund.

(c)     After the Effective Date, the Liquidating Trust Fund shall be supplemented with all of the Debtors' Cash, the Sale Proceeds and the net proceeds from the collection, sale, liquidation or other disposition of any non-Cash property, including recoveries from any Causes of Action (including, for the avoidance of doubt, Preference Actions), of the Debtors created after the Effective Date, to the extent such property has not otherwise been allocated pursuant to the terms of the Plan as necessary to fund the winding-down of the affairs of the Debtors or to satisfy the Distributions contemplated under Article II of this Plan and unimpaired creditors pursuant to Article III of this Plan.  Upon the closing of the Chapter 11 Cases, or such earlier time as it appears, in the reasonable view of the Liquidating Trustee, that the Liquidating Trust Fund is overfunded, all amounts remaining (or constituting excess funds) in the Liquidating Trust Fund, shall be allocated among each of the Debtors in the proportions set forth in the Allocation Schedule to the holders of Claims or Interests in Class 4 and Class 5 respectively in satisfaction of such Class members' Claims and Interests (the "Available Cash"). Available Cash shall also include the applicable portions of (i) excess amounts retained for Disputed Claims that become available in accordance with Section 9.03 of this Plan, (ii) excess amounts retained for Fee Claims that become available in accordance with section 2.04, and (iii) amounts represented by undeliverable Distributions in accordance with Section 8.12 of this Plan. In no event shall the Debtors' Cash and the net proceeds from the collection, sale, liquidation or other disposition of any non-Cash property, including recoveries from any Causes of Action, of the Debtors created after the Effective Date, be considered Available Cash if, notwithstanding the Wind Down Budget, insufficient assets remain in the Liquidating Trust Fund to fund the

winding-down of the affairs of the Debtors and the other items reflected in the Wind Down Budget.

(d)       On the Effective Date each Debtor shall assign, transfer and distribute to the Liquidating Trust all of its books and records related in to the foregoing.  For purposes of this section 7.01(d), books and records include computer generated or computer maintained books and records for computer data, as well as electronically generated or maintained books and records or data, along with books and records of any Debtors maintained by or in the possession of third parties, wherever located.

7.02.    Appointment of the Liquidating Trustee.

(a)       On the Effective Date, the Liquidating Trustee shall be appointed, and shall be authorized to conduct the wind down of the Debtors' affairs in accordance with section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified in the Plan.

(b)       On and after the Effective Date, neither the Liquidating Trustee nor the Liquidating Trust shall have any liability to holders of Claims or Interests other than as provided for in the Plan.  The Plan will be administered and actions will be taken in the name of the Debtor through the Liquidating Trustee irrespective of whether the Debtor has been dissolved. The Liquidating Trustee shall comply with all applicable provisions of the Plan.  On the Effective Date, the Liquidating Trustee shall assume all of its other obligations, powers and authority under the Plan.

7.03.    Powers and Duties.

(a)       General Powers and Duties.  From and after the Effective Date, pursuant to the terms and provisions of this Plan, the Liquidating Trustee shall have the powers set forth in the Liquidating Trust Agreement, and shall be empowered and directed to:  (i) take all steps and execute all instruments and documents necessary to make Distributions to holders of Allowed Claims and to perform the duties assigned to the Liquidating Trustee under this Plan and/or the Liquidating Trust Agreement; (ii) liquidate the assets of the Debtors as necessary to comply with this Plan and the obligations hereunder; (iii) employ, retain or replace, professionals to represent the Liquidating Trust and Liquidating Trustee with respect to their responsibilities (provided that any such compensation shall be made only out of the Liquidating Trust Fund) to the extent non inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d); (iv) assert, prosecute, object to, pursue, compromise or settle in accordance with the Liquidation Trustee's reasonable business judgment, all matters affecting the Estates, including, Disputed Claims, to the extent set forth in the Liquidation Trust Agreement and except as provided therein without further order of the Bankruptcy Court; (v) act on behalf of the Debtors in all adversary proceedings and contested matters then pending or that can be commenced in the Bankruptcy Court and in all actions and proceedings pending or commenced elsewhere and to settle, retain, enforce, dispute or adjust any Claim and otherwise pursue actions involving assets of the Debtors that could arise or be asserted at any time under the Bankruptcy Code, unless otherwise, waived, relinquished or transferred in the Plan; (vi) establish, replenish or release reserves as provided in this Plan, as applicable; (vii) seek a

determination of tax liability under section 505 of the Bankruptcy Code, file tax returns and pay taxes, if any, related to the Debtors; (viii) abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of the Liquidating Trustee's choice, any assets of the Debtors if they are of no benefit to the Estate or the Debtors; (ix) purchase or create and carry all insurance policies and pay all insurance premiums and costs the Liquidating Trustee deems necessary or advisable; (x) assert and enforce all legal or equitable remedies or defenses belonging to the Debtors or their Estates, without limitation setoff, recoupment and any rights under section 502(d) of the Bankruptcy code; and (x) exercise such other powers as may be vested in the Liquidating Trustee pursuant to the Plan, the Liquidating Trust Agreement or any other Plan Documents or order of the Bankruptcy Court or otherwise act on behalf of and for the Debtor from and after the Effective Date in a manner consistent with the provisions of the Plan which the Liquidating Trustee deems reasonably necessary or desirable with respect to administering the Plan.  The reasonable fees and expenses of the professional persons employed by the Liquidating Trustee (the "Liquidating Trustee Professional Fees") in connection with his or her duties and responsibilities shall be paid as set forth in this Plan.  The Liquidating Trustee Professional Fees shall be paid within ten (10) Business Days after submission of a detailed invoice therefor to the Liquidating Trustee.  If the Liquidating Trustee disputes the reasonableness of any such invoice, the Liquidating Trustee or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved.  The undisputed portion of such reasonable fees and expenses shall be paid as provided herein.

(b)    Distributions.  Pursuant to the terms and provisions of the Plan, the Liquidating Trustee shall oversee the required Distributions specified under the Plan, on the Initial Distribution Date, Interim Distribution Date or Final Distribution Date, as the case may be, under the Plan.

7.04.    Resignation, Death or Removal of Liquidating Trustee.  The Liquidating Trustee may resign at any time upon application to the Bankruptcy Court.  In the event of any such resignation, or the removal, death or incapacity of the Liquidating Trustee, the Bankruptcy Court may, upon motion of a party in interest or other request, appoint a new Liquidating Trustee.  No successor Liquidating Trustee hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.  Every successor Liquidating Trustee appointed pursuant hereto shall execute, acknowledge and file with the Bankruptcy Court, and deliver to the holders of General Unsecured Claims (at the addresses as provided in Section 8.05) an instrument in writing accepting such appointment hereunder, and thereupon such successor Liquidating Trustee, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor.  Any resigning or removed Liquidating Trustee (or the executor or other representative of any deceased or incapacitated Liquidating Trustee) shall transfer, in exchange for consideration of one dollar ($1.00), the common stock of the Debtors owned by such Liquidating Trustee to the successor Liquidating Trustee.

7.05.    Liquidation of the Debtor.

(a)    On the Effective Date, the authority, power and incumbency of the persons then acting as directors and officers of the Debtors shall be terminated (without cause)

and such directors and officers shall be deemed to have resigned without the necessity of any act on the part of such parties. On the Effective Date or as soon as reasonably practicable thereafter, the Liquidating Trustee on behalf of the Debtors shall: (a) file the Debtors' certificates of dissolution, together with all other necessary corporate documents, to effect the dissolution of the Debtors under the applicable laws of their states of incorporation; and (b) complete and file the Debtors' final federal, state and local tax returns, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of the Debtors or their Estates for any tax incurred during the administration of the Chapter 11 Cases, as determined under applicable tax laws. The filing by the Liquidating Trustee of the Debtors' certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without limitation, any action by the stockholders or the board of directors of the Debtors and expressly without the need to pay any franchise or similar taxes in order to effectuate such dissolution.

ARTICLE VIII

**PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN**

8.01.    <u>Disbursing Agent</u>.  Except as otherwise provided herein, all distributions under the Plan shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtors. Furthermore, any such entity required to give a bond shall notify the Bankruptcy Court and the U.S. Trustee in writing before terminating any such bond that is obtained.

8.02.    <u>Distributions of Cash</u>.  Any payment of Cash made by the Disbursing Agent pursuant to the Plan shall, at the Disbursing Agent's option, be made by check drawn on a domestic bank or wire transfer.

8.03.    <u>Timing of Distributions</u>.  In the event that any payment, distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or distribution or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Any requirement under the Plan that the Debtors or Disbursing Agent make a payment or Distribution on a date shall mean that such party is required to commence the process of making a payment or Distribution on such date.

8.04.    <u>Holders as of the Distribution Record Date</u>.  As of the close of business on the Distribution Record Date: (i) the claims register maintained in the Chapter 11 Cases shall be closed; and (ii) any transfer of any Claim or any Interest therein shall not be recognized by the Debtors. The Debtors shall have no obligation to recognize any transfer of any Claim occurring after 5:00 p.m. (prevailing Eastern Time) on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under this Plan with only those holders of record as of 5:00 p.m. (prevailing Eastern Time) on the Distribution Record Date.

8.05.    _Distributions to Address of Record_.  Subject to Bankruptcy Rule 9010, and except as set forth in this Section 8.05 of the Plan, all Distributions under the Plan to holders of Allowed Claims shall be made to the holder of each Allowed Claim at the address of such holder as listed on the Schedules as of the Distribution Record Date, unless the Debtors have been notified in writing of a change of address, including, without limitation, by the timely filing of a proof of claim by such holder that provides an address for such holder different from the address reflected on the Schedules.  In the event that any distribution to any such holder is returned as undeliverable, no distribution to such holder shall be made unless and until the appropriate Disbursing Agent has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter, such Distribution shall be made to such holder without interest; provided, however, that, at the later of the expiration of sixty (60) days AFTER: (a) the Effective Date and (b) the first Distribution Date after a Claim becomes an Allowed Claim, such Distributions shall be deemed unclaimed property and shall revest in the applicable Debtor and be distributed to other holders of Allowed Claims, in accordance with the Plan or as otherwise ordered by the Bankruptcy Court, as set forth in Section 8.12 of the Plan.

8.06.    _No Postpetition Interest on Claims; No More than Payment in Full_.

(a)    Unless otherwise specifically provided for in the Plan, Confirmation Order or other order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

(b)    No holder of an Allowed Claim shall be entitled to receive more than payment in full of such Allowed Claim (plus postpetition interest, if and to the extent provided in this Plan), and such Claims will be administered and treated in the manner provided in this Plan.

8.07.    _Minimum Distributions_.  No payment of Cash of less than one hundred dollars ($100) shall be made by the Debtors to any holder of an Allowed Claim unless a request therefor is made in writing to the Debtors.  If no request is made as provided in the preceding sentence within sixty (60) days of the later of: (a)  the Effective Date and (b) the first Distribution Date such Claim is Allowed, all such distributions shall be distributed to other holders of Allowed Claims in accordance with the Plan or as otherwise ordered by the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, if, on any Distribution Date there remains $5,000 or less available for Distribution to holders of Allowed General Unsecured Claims, in lieu of making any further Distributions to the holders of such Claims, the Debtors may distribute such Cash to the charity of their choice.

8.08.    _Withholding Taxes_.  Any federal or state withholding taxes or other amounts required to be withheld under any applicable law shall be deducted and withheld from any Distributions hereunder, and any property so withheld will then be paid by the Debtors to the appropriate authority.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.  The Debtors may, if necessary or appropriate to comply with applicable withholding requirements imposed on them, withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Debtors to the appropriate authority.  If the

holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within sixty (60) days from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as unclaimed property in accordance with Section 8.12 herein or the amount required to be withheld may be so withheld and turned over to the applicable authority.

8.09.    <u>Time Bar to Cash Payments by Check</u>.  Checks issued by the Debtors on account of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  Requests for the reissuance of any check that becomes null and void pursuant to this Section 8.09 may be made directly to the Debtors by the holder of the Allowed Claim to whom the check was originally issued.  Any Claim in respect of such voided check must be made in writing on or before the later of (a) the Effective Date and (b) sixty (60) days after the date on which the Distribution was made.  After that date, all Claims in respect of void checks shall be released and forever barred and the proceeds of those checks shall be deemed unclaimed property in accordance with section 347(b) of the Bankruptcy Code and be distributed as provided in Section 8.12 herein.

8.10.    <u>No Payments of Fractional Dollars</u>.  Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

8.11.    <u>Setoff and Recoupment</u>.  The Debtors may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that the Debtors or their Estates may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors or their respective Estates of any right of setoff, recoupment claims or other rights or Causes of Action that the Debtors or their respective Estates or any of their respective successors may possess against such holder.

8.12.    <u>Unclaimed Distributions</u>.  All distributions to holders of Allowed Claims under the Plan that are unclaimed for a period of sixty (60) days after distribution thereof shall be deemed unclaimed property under Bankruptcy Code section 347(b), and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.  All such unclaimed property shall revest in the Debtors and, subject to Section 8.07, be distributed to other holders of Allowed Claims in accordance with the Plan or as otherwise ordered by the Bankruptcy Court.

ARTICLE IX

**<u>PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT
AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS</u>**

9.01.   <u>Objections to Claims</u>.  Other than with respect to Fee Claims, only the Liquidating Trustee shall be entitled to object to Claims after the Effective Date.  Any objections to Claims (other than Fee Claims), which Claims have been filed on or before the later of the Confirmation Date and the applicable Bar Date, if any, shall be served and filed on or before the later of:  (a) one year after the Effective Date (or such applicable Bar Date if such applicable Bar Date is after the Effective Date); or (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) of this Section.  Any Claims filed after the applicable Bar Date shall be deemed Disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Debtors unless the Person or entity wishing to file such Claim has received prior Bankruptcy Court authority to file such Claim after the applicable Bar Date.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the Debtors or the Liquidating Trustee effect service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) by first class mail, postage prepaid, on the signatory on the proof of claim as well as all other representatives identified in the proof of claim or any attachment thereto; or (c) by (i) first class mail, postage prepaid, or (ii) if available, electronic mail, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Cases (so long as such appearance has not been subsequently withdrawn).  From and after the Effective Date, the Liquidating Trustee may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  After the Effective Date, the Liquidating Trustee shall be entitled to determine, in its reasonable discretion, that the cost and expense of pursuing claims objections outweighs the benefits to be advanced by filing one or more objections.

9.02.   <u>Amendments to Claims</u>.  After the Confirmation Date, a proof of Claim may not be amended without the authorization of the Bankruptcy Court.  Any Claim amended after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Debtors, unless the holder of the Claim has obtained prior Bankruptcy Court authorization to file the amendment.

9.03.   <u>Estimation of Claims; Certain Reserves</u>.  For purposes of calculating and making Distributions under the Plan, the Liquidating Trustee shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class.  The Liquidating Trustee shall also be entitled to seek one or more Estimation Orders from the Bankruptcy Court for such purposes, regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim for purposes of determining the Allowed amount of such Claim at any time.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  Appropriate Disputed Claims reserves shall be established for each category of Claims as to which estimates are utilized or sought.  Unless otherwise expressly set forth herein, the

Liquidating Trustee shall not be obligated to physically segregate and maintain separate accounts for reserves. Accordingly, reserves may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, as appropriate. Unless otherwise ordered by the Bankruptcy Court, no reserves shall be required to be established or maintained with respect to Claims filed after the applicable Bar Date.

9.04.    Plan Distributions to Holders of Subsequently Allowed Claims. On each Distribution Date (or such earlier date as determined by the Debtors in their sole discretion), the Disbursing Agent will make distributions or payments on account of any Disputed Claim that has become an Allowed Claim since the occurrence of the previous Distribution Date. The Disbursing Agent shall distribute in respect of such newly Allowed Claims the Pro Rata Distributions to which holders of such Claims would have been entitled under this Plan if such newly Allowed Claims were fully or partially Allowed, as the case may be, on the Effective Date, less direct and actual expenses, fees, or other direct costs.

9.05.    Insurance Preservation and Proceeds. Except with regard to claims against the Released Parties that are released hereunder, nothing in the Plan shall diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors or any related Person. Notwithstanding anything to the contrary contained herein: (i) to the extent the Debtors have insurance with respect to an Allowed Claim, such Allowed Claim shall (a) be paid from the proceeds of insurance to the extent that the Claim is insured, and (b) receive the treatment provided for herein to the extent the applicable insurance policy does not provide coverage with respect to any portion of the Allowed Claim. Holders of Claims which are eligible to be satisfied, in whole or in part, through any such policy shall be obligated, as a condition to receiving any Distributions under the Plan, to seek recovery (or, if applicable, assist the Debtors in seeking recovery) under such policies with regard to such Claims.

9.06.    Allocation of Plan Distributions Between Principal and Interest. To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

9.07.    No Recourse. Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by this Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Disbursing Agent, the Debtors, the Liquidating Trustee, Released Party or any of their respective professionals, consultants, officers, directors, employees or members or their successors or assigns, or any of their respective property. **THE ESTIMATION OF CLAIMS AND THE ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.**

9.08.    Satisfaction of Claims and Interests.  Unless otherwise provided in the Plan or the Confirmation Order, any Distributions and deliveries to be made on account of Allowed Claims and Interests under the Plan shall be in complete settlement, satisfaction and discharge of such Allowed Claims or Interests.

ARTICLE X

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

10.01.    Rejection of Executory Contracts and Unexpired Leases.  Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases of the Debtors not previously rejected by the Debtors pursuant to an order of the Bankruptcy Court shall be deemed to be rejected by the Debtors as of the Effective Date, except for any executory contract or unexpired lease: (x) that previously has been assumed and/or assigned pursuant to an order of the Bankruptcy Court entered prior to the Effective Date; (y) as to which a motion for approval of the assumption and/or assignment of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date; or (z) that is specifically designated as a contract or lease to be assumed and/or assigned by the Debtors.  Any order entered after the Confirmation Date by the Bankruptcy Court, after notice and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered prior to the Confirmation Date.  All Claims arising from the rejection of executory contracts or unexpired leases, if any, will be treated as General Unsecured Claims.  Notwithstanding anything herein to the contrary, all compensation and benefits programs shall continue in effect until there are no employees of the Debtors, at which time all compensation and benefit programs shall be deemed terminated.

10.02.    Approval of Rejections by Confirmation Order.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections contemplated by this Plan pursuant to sections 365 and 1123 of the Bankruptcy Code.  Notwithstanding anything herein to the contrary, any agreement, obligation, security interest, transaction or similar undertaking that the Debtors believe is not executory or a lease that is later determined by the Bankruptcy Court to be an executory contract or unexpired lease that is subject to assumption or rejection under section 365 of the Bankruptcy Code, shall be subject to assumption or rejection within thirty (30) days of any such determination or such longer period as may be authorized by the Bankruptcy Court.

10.03.    **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.  Claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section 10.01 of the Plan must be filed with the Bankruptcy Court and served upon the Debtors no later than thirty (30) days after the earlier of: (i) notice of entry of an order approving the rejection of such executory contract or unexpired lease; and (ii) notice of occurrence of the Effective Date.  All such Claims not filed within such time will be forever barred from assertion against the Debtors and their Estates.**

10.04.  Indemnification of Directors, Officers and Employees.  For purposes of the Plan, the obligation of the Debtors to indemnify and reimburse any Person or entity serving at any time on or after the Petition Date as one of its directors, officers or employees by reason of such Person's or entity's service in such capacity, or as a director, officer or employee of any of the Debtors or any other corporation or legal entity, to the extent provided in such Debtor's constituent documents, a written agreement with the Debtor(s), in accordance with any applicable law, or any combination of the foregoing, shall survive confirmation of the Plan and the Effective Date, remain unaffected thereby, become an obligation of the Debtors solely to the extent of available insurance, and not be released, irrespective of whether indemnification or reimbursement is owed in connection with an event occurring before, on, or after the Petition Date.  For the avoidance of doubt, nothing herein shall be construed as the Debtors assuming any obligation with respect to any self-insured retention for which the applicable insurer has the ability to assert a prepetition Claim against the applicable Debtor in accordance with the order setting the Bar Date or other order of the Court.  On and after the Effective Date, the coverage under any directors' and officers' insurance policies in effect on the Petition Date shall not be terminated or otherwise reduced by or on behalf of the Debtors, and all directors and officers of the Debtors at any time shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and/or officers remain in such positions after the Effective Date.

## ARTICLE XI

## **CONDITIONS PRECEDENT**

11.01.  Conditions Precedent to the Effective Date. The occurrence of the Effective Date is subject to:

(a)    the Disclosure Statement Order and Confirmation Order having been entered and shall not have been stayed, modified, vacated or appealed;

(b)    the Debtors having obtained all authorizations, consents, regulatory approvals, rulings or documents that are necessary to implement and effectuate the Plan and the transaction contemplated hereunder; and

(c)    the Plan Documents having been executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by the Debtors that the Effective Date has occurred) contained therein having been satisfied or waived in accordance therewith.

11.02.  Waiver of Conditions Precedent and Bankruptcy Rule 3020(e) Automatic Stay.

(a)    The Debtors shall have the right to waive one or more of the conditions precedent set forth in Sections 11.01 and 11.02 of the Plan at any time without leave of or notice to the Bankruptcy Court and without formal action other than proceeding with consummation of the Plan.  If any condition precedent to the Effective Date is waived pursuant to this Section 11.02 and the Effective Date occurs, the waiver of such condition shall benefit from the "mootness doctrine," and the act of consummation of the Plan shall foreclose any ability to

challenge the Plan in any court.  Unless otherwise provided herein, any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

(b)    Pursuant to Bankruptcy Rule 3020(e), the Confirmation Order shall be immediately effective upon its entry and shall not be subject to the stay provided in Bankruptcy Rule 3020(e).

## ARTICLE XII

## <u>EXCULPATION, INJUNCTION AND</u>
## <u>RELATED PROVISIONS EFFECT OF CONFIRMATION</u>

12.01.  <u>Binding Effect</u>. This Plan shall be binding and inure to the benefit of the Debtors, the Liquidating Trustee, the Liquidating Trust, the Released Parties, all present and former holders of Claims and Interests and their respective successors and assigns.

12.02.  <u>Release of Claims Against and Interests in the Debtors</u>.  Upon the Effective Date and in consideration of the Distributions to be made hereunder, except as otherwise provided herein or in the Confirmation Order, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived and released the Debtors of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date.  Except as otherwise provided herein, upon the Effective Date, all such holders of Claims and Interests and their affiliates shall be forever precluded and enjoined from prosecuting or asserting any such waived and released Claim against or terminated Interest in the Debtors.  Nothing in this Section shall preclude any holder of an Allowed Claim or Interest from receiving the applicable Distribution provided for under the Plan.

12.03.  <u>Term of Pre-Confirmation Injunctions or Stays</u>.  Unless otherwise provided herein, all injunctions or stays arising prior to the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

12.04.  <u>Injunction Against Interference With Plan</u>.  Upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

12.05.    *<u>Injunction</u>.*

(a)    *Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in any of the Debtors or the Estates are, with respect to any such Claims or Interests, permanently enjoined from:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action*

*or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Liquidating Trustee, the Liquidating Trust, the Estates or any of their respective property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors, the Liquidating Trustee, the Liquidating Trust, the Estates or any of their respective property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Liquidating Trustee, the Liquidating Trust, the Estates or any of their respective property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Plan.*

*(b)    Each holder of an Allowed Claim or Allowed Interest shall be deemed to have specifically consented to the injunctions set forth herein.*

12.06.    *Releases.*

*(a)    Releases by the Debtors.    Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, the Debtors, as, debtors in possession, and any person seeking to exercise the rights of the Debtors Estates, including without limitation, any successor to the Debtors, including the Liquidating Trustee, the Liquidating Trust, or any representative of the Debtors' Estates appointed or selected pursuant to sections 1103, 1104 or 1123(b)(3) of the Bankruptcy Code or under chapter 7 of the Bankruptcy Code, shall be deemed to forever release, waive and discharge all claims (as such term "claim" is defined in section 101(5) of the Bankruptcy Code), obligations, suits, judgments, damages, demands, debts, rights, causes of action (including, but not limited to, the Causes of Action) and liabilities (other than the rights of the Debtors to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered thereunder) against any Released Party, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtors or their Estates, whether directly, indirectly, derivatively or in any representative or any other capacity; provided, however, that in no event shall anything in this Section 12.06(a) be construed as a release of any Person's fraud or willful misconduct, as determined by a Final Order, for matters with respect to the Debtors and/or their affiliates.    Entry of the Confirmation Order shall constitute the Bankruptcy*

*Court's approval, pursuant to Bankruptcy Rule 9019, of the releases herein, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the releases herein are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by the releases herein; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (6) a bar to any of the Debtors asserting any claim released by the releases herein against any of the Released Parties; provided, further, nothing contained herein shall release Jane Park on account of the Jane Park Promissory Note.*

*(b)        Releases by Holders of Claims and Interests.  Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, (i) each holder of a Claim that voted to accept the Plan, (ii) each Released Party (other than the Debtors), and (iii) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, all holders of Claims in consideration for the obligations of the Debtors under the Plan, the Distributions under the Plan and other contracts, instruments, releases, agreements or documents executed and delivered in connection with the Plan, will be deemed to have consented to the Plan and the restructuring and liquidation embodied herein for all purposes and deemed to forever release, waive and discharge all claims (as such term is defined in section 101(5) of the Bankruptcy Code), including but not limited to any claim sounding in law or equity or asserting a tort, breach of any duty or contract, violations of the common law, any federal or state statute, any federal or state securities laws or otherwise, demands, debts, rights, causes of action (including without limitation, the Causes of Action) or liabilities (other than the right to enforce the obligations of any party under the Plan and the contracts, instruments, releases, agreements and documents delivered under or in connection with the Plan), including, without limitation, any claims for any such loss such holder may suffer, have suffered or be alleged to suffer as a result of the Debtors commencing the Chapter 11 Cases or as a result of the Plan being consummated, against any Released Party, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, the Plan or the Disclosure Statement; provided, however, that the foregoing shall not apply to: (i) any holder of a Claim or Interest entitled to vote on the Plan that did not vote on the Plan; (ii) any holder of a Claim or Interest who voted to reject the Plan and also did not check the box on the applicable ballot indicating that they "opt in" to the releases provided in this section 12.06(b); and (iii) any holder of a Claim not entitled to vote to accept or reject this Plan who did not check the box on the notice notifying such Claim holder of their non-voting status indicating that they "opt in" to the releases provided in this section 12.06(b); provided, further, that in no event shall anything in this Section 12.06(b) be construed as a release of any Person's fraud or willful misconduct, as determined by a Final Order, for matters with respect to the Debtors and/or their affiliates.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases of holders of Claims and Interests, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the releases herein*

*are (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims herein; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable and reasonable; (5) given and made after notice and opportunity for hearing; and (6) a bar to any holder of a Claim or Interest asserting any Claim released by the releases herein against any of the Released Parties.*

*(c)        Notwithstanding anything to the contrary contained herein: (i) except to the extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, the releases provided for in this Section 12.06 of the Plan shall not release any non-Debtor entity from any liability arising under (x) the Internal Revenue Code or any state, city or municipal tax code, (y) any criminal laws of the United States or any state, city or municipality, or (y) any environmental laws of the United States or any state, city or municipal tax code; and (ii) the releases set forth in this Section 12.06 shall not release any (x) claims, right, or Causes of Action for money borrowed from or owed to the Debtors by any of their directors, officers or former employees, as set forth in the Debtors' books and records, (y) any claims against any Person to the extent such Person asserts a crossclaim, counterclaim and/or claim for setoff which seeks affirmative relief against a Debtor or any of its officers, directors, or representatives, and (z) claims against any Person arising from or relating to such Person's gross negligence or willful misconduct, each as determined by a Final Order of the Bankruptcy Court.*

*12.07. <u>Exculpation and Limitation of Liability</u>.  None of the Debtors, the Liquidating Trustee, the Liquidating Trust or the Released Parties shall have or incur any liability to any holder of any Claim or Interest for any act or omission in connection with, or arising out of the Debtors' restructuring and liquidation, including without limitation the negotiation and execution of the Plan, the Chapter 11 Cases, the Disclosure Statement, the solicitation of votes for and the pursuit of the Plan (including that solicitation of acceptances of the Plan was not conducted in good faith nor in compliance with the applicable provisions of the Bankruptcy Code), the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, including, without limitation, all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all prepetition activities leading to the promulgation and confirmation of the Plan except fraud, gross negligence, or willful misconduct as determined by a Final Order of the Bankruptcy Court.  For purposes of the foregoing, it is expressly understood that any act or omission effected with the approval of the Bankruptcy Court conclusively will be deemed not to constitute gross negligence, or willful misconduct.  The Debtors, the Liquidating Trustee, the Liquidating Trust and the Released Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities with respect to the Chapter 11 Cases, the Plan and the administration thereof.*

*12.08. <u>Injunction Related to Releases and Exculpation</u>.  The Confirmation Order shall permanently enjoin the commencement or prosecution by any person or entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to the Plan, including but not limited to the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released under this Article XII of the Plan.*

12.09.  <u>Termination of Subordination Rights and Settlement of Related Claims</u>.  Except as expressly provided herein, the classification and manner of satisfying all Claims and Interests and the respective distributions, treatments and other provisions under the Plan take into account or conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, sections 510(a) and 510(b) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan.  The Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Persons and entities from enforcing or attempting to enforce any such contractual, legal and equitable rights satisfied, compromised and settled pursuant to the Plan. Any disagreement with the priorities or distributions set forth in the Plan or any right to assert contractual subordination shall be raised on or prior to the deadline to object to the Plan, and decided at or prior to the Combined Hearing, and all issues with respect to contractual subordination not raised or resolved at the Combined Hearing shall be governed pursuant to the Plan or, if the decision of the Bankruptcy Court at the Combined Hearing differs from the Plan, then such decision shall govern.

12.10.  <u>Retention of Causes of Action/Reservation of Rights</u>.  Except with respect to the Released Parties or any other beneficiary of the releases, injunctions and exculpations contained in this Article XII, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims or Causes of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Effective Date, on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law.  The Debtors shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff or other legal or equitable defenses which the Debtors had immediately prior to the Petition Date as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and/or equitable rights respecting any Claim may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced.  Except as otherwise provided in the Plan, Confirmation Order or the Liquidating Trust Agreement, after the Effective Date, the Debtors, through the Liquidating Trustee, shall have the exclusive right to institute, prosecute, abandon, settle or compromise all Causes of Action (excluding those Causes of Action released pursuant to this Article XII), in their sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases.

12.11.  <u>Releases of Liens</u>.  Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, in consideration for the Distributions granted hereunder, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of any of the Estates shall be fully released and deemed satisfied and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtors.  On the Effective Date, the holder of each such mortgage, deed of trust, lien, pledge or other security interest against property of the Estates shall be deemed to have appointed the Debtors as agent to such holder for the purpose of filing and recording all releases with respect to each such mortgage, deed of trust, lien, pledge or other security interest held against property of the Estates.

ARTICLE XIII

**RETENTION OF JURISDICTION**

13.01.  Scope of Bankruptcy Court Jurisdiction.  On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157, over all matters arising in, arising under or related to the Chapter 11 Cases for, among other things, the following purposes:

(a)    To hear and determine pending applications for the assumption and assignment or rejection of executory contracts or unexpired leases and the allowance of cure amounts if any, and Claims resulting therefrom or from the assumption, assumption and assignment or rejection of executory contracts or unexpired leases pursuant to this Plan;

(b)    To hear and determine any and all adversary proceedings, applications and contested matters, and to order appropriate relief in connection therewith (including issuance and/or enforcement of releases);

(c)    To consider and resolve any Claims or Interests, or the allowance, classification, priority, compromise, estimation or payment of any Claim or Interest;

(d)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(e)    To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(f)    To consider any amendments to, or modifications of, the Plan and the Plan Supplement, and any dispute or controversy relating to execution, delivery or compliance with any document included in the Plan Supplement, and to cure any defect or omission, or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(g)    To hear and determine all Fee Claims;

(h)    To resolve disputes concerning any reserves, including with respect to Disputed Claims or the administration thereof;

(i)    To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(j)    To recover all assets and property of the Debtor, wherever located;

(k)    To hear and determine matters concerning state, local and federal taxes, including as provided by sections 346, 505 and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(l)      To determine the scope of any discharge of any Debtor under the Plan or the Bankruptcy Code;

(m)      To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan;

(n)      To hear any other matter not inconsistent with the Bankruptcy Code; and

(o)      To enter a final decree closing the Chapter 11 Cases.

ARTICLE XIV

**MISCELLANEOUS PROVISIONS**

14.01.  Effectuating Documents and Further Transactions.  The Debtors are authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued pursuant to this Plan.

14.02.  Corporate Action.  On the Effective Date, all matters provided for under this Plan that would otherwise require approval of the stockholders, directors, members, managers or partners of the Debtors, including (i) the effectiveness of the certificates of incorporation and bylaws of the Debtors, (ii) the election or appointment, as the case may be, of directors and officers of the Debtors, and (iii) qualification of the Debtors as foreign corporations wherever the conduct of business by the Debtors requires such qualification, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to Section 303 of the Delaware General Corporation Law, without any requirement of further action by the stockholders, directors, members, managers, or partners of the Debtors.  On the Effective Date, or as soon thereafter as is practicable, the Debtors shall, if required, file their respective certificates of incorporation with the Secretary of State of the state in which each such entity is incorporated, in accordance with the applicable general corporation law of each such state.

14.03.  Exemption from Transfer Taxes.  To the fullest extent permitted by applicable law, any transfer or encumbrance of assets or any portion(s) of assets pursuant to, or in furtherance of, or in connection with the Plan shall constitute a "transfer under a plan" within the purview of section 1146(a) of the Bankruptcy Code and shall not be subject to transfer, stamp or similar taxes.

14.04.  Payment of Statutory Fees.  On the Effective Date, and thereafter as may be required, each Debtor or the Liquidating Trustee, as the case may be, shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code through the entry of a final decree closing the its Chapter 11 Case.

14.05.  Post-Effective Date Fees and Expenses.  From and after the Effective Date, the Debtors, or the Liquidating Trustee, as the case may be, shall in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and

expenses of Professional Persons thereafter incurred by the Debtors, including those fees and expenses incurred in connection with the implementation and consummation of this Plan.

14.06.  <u>Amendment or Modification of this Plan</u>.  Alterations, amendments or modifications of or to the Plan (including to provide for treatment different than that set forth herein with respect to any Class of Claim or Interest, including the establishment of subclasses of Classes of Claims or Interests to the extent required if so elected by the Debtors, the unimpairment of Classes that are impaired hereunder, and the impairment of Classes that are unimpaired hereunder) may be proposed in writing by the Debtors at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code.  This Plan may be altered, amended or modified at any time after the Confirmation Date and before substantial consummation, provided that this Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments or modifications.  A holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Interest of such holder.

14.07.  <u>Revocation or Withdrawal of this Plan</u>.  The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date in whole or in part.  If the Debtors revoke or withdraw the Plan prior to the Effective Date, then except as set forth in this Section 14.07 of the Plan, the Plan shall be deemed null and void.  In the event of any such waiver or revocation, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against any Debtor or any other Person or to prejudice in any manner the rights of any Debtor or any Person in any further proceedings involving the Debtors.

14.08.  <u>Dissolution of the Committee</u>.  The functions of the Committee shall terminate on the later of:  (i) the Effective Date; and (ii) the conclusion of any appeals with respect to the Confirmation Order or an Omnibus Claims Objection that the Committee is a party to (but such functions shall relate solely to services performed related to such appeal), and the Committee shall be deemed dissolved as of such date and shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases; <u>provided</u>, <u>however</u>, Professional Persons to the Committee shall be entitled to prosecute their respective Fee Claims and represent their respective constituents with respect to applications for payment of such Fee Claims as against the Debtors and the Debtors shall be responsible for the fees, costs and expenses associated with the prosecution of such Fee Claims.

14.09.  <u>Confirmation Order</u>.  The Confirmation Order shall, and is hereby deemed to, ratify all transactions effected by the Debtors during the period commencing on the Petition Date and ending on the Confirmation Date except for any acts constituting willful misconduct, gross negligence, recklessness or fraud.

14.10.  <u>Severability</u>.  If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.11.  <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit or schedule hereto or in the Plan Supplement provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to any contrary result otherwise required under applicable choice or conflict of law rules.

14.12.  <u>Inconsistency</u>.  In the event of any inconsistency among the Plan, the Disclosure Statement, the Plan Documents, any exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

14.13.  <u>Binding Effect</u>.  The Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims and Interests and their respective successors and assigns.

14.14.  <u>Exhibits/Schedules</u>.  All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

14.15.  <u>Filing of Additional Documents</u>.  On or before substantial consummation of the Plan, the Debtors shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any such agreements or other documents relating specifically to the terms and conditions of the Plan.

14.16.  <u>Notices</u>.  All notices, requests and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**WILLKIE FARR & GALLAGHER LLP**
Brian S. Lennon
Daniel I. Forman
Andrew S. Mordkoff
787 Seventh Avenue
New York, New York  10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
(As Counsel to the Debtors and the Liquidating Trustee)

- and -

**ARENT FOX LLP**
Andrew I. Silfen
George P. Angelich
Beth M. Brownstein
1301 Avenue of the Americas, Floor 42
New York, New York  10019-6099
Telephone: (212) 484-3900
(As Counsel to the Committee)

14.17.  <u>Reservation of Rights</u>.  Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order.  None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by the Debtors with respect to this Plan shall be or shall be deemed to be, an admission or waiver of any rights of the Debtors with respect to any Claims or Interests prior to the Effective Date.

Dated: New York, New York
       March 1, 2019

Respectfully submitted,

Glansaol Holdings Inc.
On behalf of itself and its
affiliated Debtors

By: _____
Name: Nancy Bernardini
Title:   Authorized Signatory

**Exhibit A**

| Debtor | Case No. |
|---|---|
| Glansaol Holdings Inc. | 18-14102 (MEW) |
| Glansaol LLC | 18-14103 (MEW) |
| Glansaol Management LLC | 18-14104 (MEW) |
| Julep Beauty, Inc. | 18-14105 (MEW) |
| Laura Geller Beauty, LLC | 18-14106 (MEW) |
| Laura Geller Brands, LLC | 18-14107 (MEW) |
| Laura Geller Holdings, LLC | 18-14108 (MEW) |
| Clark's Botanicals, Inc. | 18-14109 (MEW) |

## **Exhibit B**

**Allocation Schedule**