Andrew I. Silfen
George P. Angelich
Beth M. Brownstein
ARENT FOX LLP
1301 Avenue of the Americas
New York, NY 10019
(212) 484-3900

*Counsel for the Official
Committee of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| GLANSAOL HOLDINGS INC., *et al.*, | : | Case No. 18-14102 (MEW) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

------------------------------------------------------------x

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS' REPLY TO ADVANCED DISTRIBUTION SYSTEMS, INC.'S LIMITED OBJECTION TO THE PLAN

The Official Committee of Unsecured Creditors (the "Committee") appointed pursuant to section 1102 of Title 11 of the United States Code (the "Bankruptcy Code") in the chapter 11 cases (the "Chapter 11 Cases") of Glansaol Holdings Inc., *et al.* (collectively, the "Debtors"), by and through its undersigned counsel, hereby files this reply to *Advanced Distribution Systems, Inc.'s Limited Objection to the Third Amended Joint Liquidating Plan of the Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 409] (the "Objection").[2] In support hereof, the Committee respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal taxpayer identification number are as follows: Clark's Botanicals, Inc. (0754); Glansaol Holdings Inc. (9485); Glansaol LLC (2012); Glansaol Management LLC (6879); Julep Beauty, Inc. (7984); Laura Geller Beauty, LLC (1706); Laura Geller Brands, LLC (7428); and Laura Geller Holdings, LLC (7388). The Debtors' executive headquarters are located at 575 Lexington Avenue, New York, NY 10022.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Objection.

## **REPLY**

1. The Objection filed by Advanced Distribution Systems, Inc. ("ADS") does not raise legitimate confirmation issues and should be overruled. As an initial matter, ADS's contention that Debtors' chapter 11 plan [Docket No. 368] (the "Plan") does not adequately reserve for ADS's Administrative Expense Claim (as defined in the Plan) is a red herring. The Debtors addressed this concern through testimony demonstrating that the Debtors' Administrative and Priority Claim Reserve is sufficient to pay all anticipated Administrative Expense Claims including, to the extent allowed, ADS's asserted Administrative Expense Claim.[3] The Committee believes the Debtors' testimony is sufficient to demonstrate their administrative solvency and, therefore, ADS's concerns should not be a bar to confirmation.

2. Next, ADS takes issue with certain Plan provisions that merely confirm the obligation of the purchaser of the Debtors' assets, AS Beauty, LLC (the "Purchaser"), rather than the Debtors, to pay Cure Amounts. Such Plan provisions reflect what is expressly provided for in the Court's prior Sale Order (as defined below), section 365(k) of the Bankruptcy Code and the other Sale Documents (defined below). ADS received notice of all the Sale Documents and neither objected nor raised any concerns. Consequently, ADS cannot now contest confirmation of the Plan on the basis of the Court approved sale process. In fact, rather than raising a confirmation issue, the Objection appears to be designed to extract a settlement payment from the estates, to the detriment of all other unsecured creditors, for a prepetition obligation that was plainly transferred to the Purchaser, with ADS's consent..

3. ADS's argument that the Cure Amount somehow remains the Debtors' administrative obligation ignores the plain language of (a) the Cure Notice and Assumption

---

[3] *See Declaration of John P. Madden in Support of Confirmation of the Third Amended Joint Liquidating Plan of the Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 427] at ¶ 17.

Notice attached to ADS's Objection, (b) this Court's order approving the sale to the Purchaser [Docket No. 165] (the "Sale Order"), and (c) the Asset Purchase Agreement between the Purchaser and the Debtors approved thereunder [Docket No. 104], Ex. 1 (the "APA" and, together with the Cure Notice, the Assumption Notice, and the Sale Order, the "Sale Documents"). The Sale Documents unequivocally provide that the Cure Amount is solely an obligation of the Purchaser.

4. First, the Cure Notice established the proposed Cure Amount and provided that ADS's contract would be assumed and assigned to the successful bidder absent a timely objection. Second, the Assumption Notice stated that the Purchaser was the successful bidder to whom ADS's contract would be assigned. Both the Cure Notice and Assumption Notice were served on ADS (*see* [Docket Nos. 131 & 166]). ADS failed to object or assert any kind of response to either Notice. Third, this Court's order approving the bidding procedures in connection with the sale [Docket No. 104] (the "Bid Procedures Order") explicitly bars any party that failed to timely object to the Cure Amount or to assignment to the Purchaser from ever doing so. *See* Bid Procedures Order, ¶¶ 14-24.

5. Fourth, the Sale Order, which ADS also failed to contest, contains the following relevant provisions:

- "For the avoidance of doubt, all Cure Amounts with respect to Purchased Contracts shall be paid as specified in the Selected APA, and all obligations under Purchased Contracts that come due from and after the Closing Date shall constitute 'Assumed Liabilities' for purposes of the Sale and this Order." Sale Order at ¶ 15.

- "The Purchased Contracts shall be transferred to, and remain in full force and effect for the benefit of, the Successful Bidder in accordance with their respective terms . . . and, to the extent provided by section 365(k) of the Bankruptcy Code, the Sellers shall be relieved from any further liability with respect to the Purchased Contracts after such assignment to and assumption by the Successful Bidder, except as provided in the Selected APA." *Id.* at ¶ 16.

3

- "The non-Debtor counterparties to the Purchased Contracts have not objected to the assignment under Bankruptcy Code section 365(c)(1)(B) within the times specified by this Court's prior orders, and are now barred from doing so." *Id.* at ¶ 17.

6. Thus, the Sale Order makes clear that (a) Cure Amounts are "Assumed Liabilities" to be paid by the Purchaser, (b) upon assumption and assignment to the Purchaser, the Debtors are relieved of liability under the Purchased Contracts pursuant to section 365(k) of the Bankruptcy Code[4], and (c) contract counterparties, such as ADS, are barred from objecting to assignment of their contracts to the Purchaser. And fifth, the APA is likewise clear that Cure Amounts are "Assumed Liabilities" thereunder that "shall be paid by the Purchaser[.]" APA, §§ 2.5(i), 2.7(a)(ii).[5]

7. ADS did not object to any of the foregoing Sale Documents and, thus, it waived any rights to enforce the Cure Amount against the Debtors' estates. Moreover, ADS does not even attempt to refute what the Sale Documents clearly provide. Rather, it makes the bare assertion, without providing any authority, that notwithstanding the plain language of the Sale Documents, section 365(b) of the Bankruptcy Code prevents the Debtors from transferring its cure obligation for purchased contracts to the Purchaser. Contrary to ADS's contention, the transfer of cure costs is standard in section 363 sales and has been frequently approved by this Court. *See*, *e.g.*, *In re Relativity Media, LLC, et al.*, Case No. 18-11358 [Docket No. 502] (Bankr. S.D.N.Y. August 21, 2018) (MEW); *In re Manhattan Jeep Chrysler Dodge, Inc., et al.*, Case No. 18-10657 [Docket No. 77] (Bankr. S.D.N.Y. August 10, 2018); [Docket No. 93]

---

[4] Section 365(k) states: "Assignment by the trustee to an entity of a contract or lease assumed under this section relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment."

[5] Specifically, section 2.5(i) provides: "For purposes of this Agreement, 'Assumed Liabilities' shall mean only the following Liabilities (to the extent not paid at or prior to closing): (i) the Cure Costs in respect of Assumed Leases and Assumed Contracts…". Separately, section 2.7(a)(ii) provides: "The Cure Costs in respect of all Assumed Leases and Assumed Contracts shall be paid by the Purchaser[.]"

(Bankr. S.D.N.Y. September 7, 2018) (MEW); *In re BICOM NY, LLC, et al.*, Case No. 17-11906 [Docket No. 284] (Bankr. S.D.N.Y. October 11, 2017) (MEW); *In re Agent Provocateur, Inc., et al.*, Case No. 17-10987 [Docket No. 165] (Bankr. S.D.N.Y. June 28, 2017) (MEW).

8.  The Plan provisions ADS finds objectionable only reiterate what has already been finally decided by the Sale Order and what is provided for under Bankruptcy Code §365(k). The Debtors and the Purchaser clearly and unambiguously agreed that Cure Amounts are the sole obligation of the Purchaser as "Assumed Liabilities" and the Court approved that agreement by virtue of the Sale Order. And while ADS contends that "ADS is not a party to that agreement", it was offered numerous opportunities at various stages to weigh-in or object. ADS elected not to. Confirmation is not the time to attack the Court-approved sale process and Sale Documents, which set the stage for the Plan and on which the parties have relied.

9.  Based on the foregoing, the Objection should be overruled. To the extent necessary, or should any doubt regarding these issues remain following confirmation, ADS's asserted claim will be dealt with by the Plan Administrator after Plan confirmation and occurrence of the Effective Date in accordance with the post-Effective Date claims reconciliation process. To the extent the amounts asserted by ADS (other than the Cure Amount) are determined to constitute "the actual, necessary costs and expenses of preserving the estate" under section 503(b)(1) and applicable law, those amounts will be allowed and paid in full as an Administrative Expense Claim. The Cure Amount, however, is clearly an obligation of the Purchaser, not the Debtors' estates.[6]

---

[6] If, however, after sufficient diligence and discovery, the Cure Claim is for some reason determined to be a general unsecured claim against the estates, there are numerous grounds for objections and defenses available to the Plan Administrator for seeking its disallowance and expungement. Among them are ADS's admitted failure to file a proof of claim asserting a prepetition claim and a defense under section 502(d) based on prepetition preferential payments that ADS may have received.

## **CONCLUSION**

10. The Committee has been integrally involved in these Chapter 11 Cases to protect the interests of general unsecured creditors and maximize their recoveries. Among other things, the Committee led the negotiations with the Debtors' equity sponsor that resulted in the sponsor's agreement to pay an additional $1.65 million into the estates pursuant to the Global Settlement and, before that, the negotiations that resulted in an increased purchase price of nearly $2 million for the sale of the Debtors' assets to the Purchaser. The Committee was also involved in negotiating and drafting of the Plan and revising the Disclosure Statement in response to the Court's comments (*see* [Docket No. 321]), which represent the culmination of all the parties' efforts in these cases. The Committee believes the Plan is in the best interests of unsecured creditors and is supportive of confirmation. The Plan is the product of hard-fought, good faith negotiations and compromises between stakeholders of numerous complex issues and provides for meaningful distributions to unsecured creditors. The Committee respectfully requests that the Objection be overruled and the Plan be confirmed.

## **RESERVATION OF RIGHTS**

11. The Committee reserves its right to further address the Objection and any other ancillary issues either by further submission to this Court, at oral argument or testimony to be presented at any hearing.

[*remainder of page intentionally left blank*]

Dated: New York, New York
August 1, 2019

                                                ARENT FOX LLP

*Counsel for the Official Committee
of Unsecured Creditors*

By: */s/ George P. Angelich*
      Andrew I. Silfen
      George P. Angelich
      Beth M. Brownstein
      1301 Avenue of the Americas
      New York, New York 10019
      Telephone: (212) 484-3900
      Facsimile: (212) 484-3990