WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ray C. Schrock, P.C.
Jacqueline Marcus
Garrett A. Fail
Sunny Singh
Jessica Liou

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **SEARS HOLDINGS CORPORATION**, *et al.*, | : | **Case No. 18-23538 (RDD)** |
| | : | |
| | : | **(Jointly Administered)** |
| **Debtors.**[1] | : | |
| | : | **Re: Docket No. 1077** |

------------------------------------------------------------x

## NOTICE OF HEARING FOR APPROVAL OF SALE OF MEDIUM
## TERM INTERCOMPANY NOTES TO CYRUS CAPITAL PARTNERS L.P.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

**PLEASE TAKE NOTICE THAT:**

1.      Beginning on October 15, 2018 (the "**Commencement Date**") and continuing thereafter, each of Sears Holdings Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") commenced with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

2.      On November 19, 2018, the Bankruptcy Court entered the *Order Authorizing Debtors to Sell Medium Term Notes* (the "**MTN Sale Order**") (ECF No. 826), granting the Debtors authorization to sell certain Medium Term Notes Series B (the "**MTNs**") issued by Debtor Sears Roebuck Acceptance Corp.

3.      On November 20, 2018, the Debtors conducted an auction of the MTNs in accordance with the sale procedures set forth in the MTN Sale Order and determined that the offer submitted by Cyrus Capital Partners L.P. ("**Cyrus**") for $82,500,000 and other valuable consideration was the highest and best offer.

4.      Attached hereto as **Exhibit A** is a copy of the final, fully executed Note Purchase Agreement (the "**Note Purchase Agreement**", and the transactions effected thereby the "**Transaction**") between the Debtors and Cyrus pursuant to which Cyrus purchased the MTNs on November 28, 2018.  The Note Purchase Agreement includes a provision that provides that no Debtor nor any affiliate thereof (other than Sears Reinsurance Company Ltd. in the event that it is ordered to do so by a Bermuda court appointed receiver appointed in a Bermuda receivership shall sell, transfer or assign any MTNs to any non-Debtor.  *See* Note Purchase Agreement, section 6(a).

5.      The Court has scheduled a hearing for **January 2, 2019 at 10:00 a.m. (Eastern Time)** (the "**Hearing**") to consider any objections to the Transaction

6.      Any objections to the Transaction (each, an "**Objection**"), must be filed on or before **December 31, 2018 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**"). Objections must be filed and served in accordance with the *Amended Order Implementing Certain Notice and Case Management Procedures* (ECF No. 405), which is available for download at https://restructuring.primeclerk.com/sears/Home-Index.  Objections, if any, will be heard at the Hearing.  To the extent that any party who files an Objection wishes to make a competing bid for the MTNs, they should provide the terms of a binding and non-contingent bid, including evidence of committee financing, prior to the Objection Deadline.

Dated: December 21, 2018
       New York, New York

                        /s/ Jacqueline Marcus
                        WEIL, GOTSHAL & MANGES LLP
                        767 Fifth Avenue
                        New York, New York  10153
                        Telephone:  (212) 310-8000
                        Facsimile:  (212) 310-8007
                        Ray C. Schrock, P.C.
                        Jacqueline Marcus
                        Garrett A. Fail
                        Sunny Singh
                        Jessica Liou

                        *Attorneys for Debtors*
                        *and Debtors in Possession*

WEIL:\96852401\4\73217.0004

**Exhibit A**

**Note Purchase Agreement**

# NOTE PURCHASE AGREEMENT

**NOTE PURCHASE AGREEMENT** (this "Agreement"), dated as of November 20, 2018 (the "Closing"), by and among CYRUS CAPITAL PARTNERS, LP, on behalf of one or more affiliates or funds or accounts managed by Cyrus Capital Partners, L.P. or one of its affiliates (the "Purchaser"), SEARS ROEBUCK ACCEPTANCE CORP., a Delaware corporation ("SRAC"), SEARS HOLDING CORPORATION ("Holdings"), a Delaware corporation, and each of the other debtors listed on Annex A hereto (together with SRAC, Holdings and any other party that becomes a debtor under the Chapter 11 Case (as defined below) from time to time, each, a "Debtor" and collectively, the "Debtors").

**WHEREAS**, Holdings and the other Debtors are currently debtors and debtors in possession in the jointly administered bankruptcy cases, Case No. 18-23538 (RDD), (the "Chapter 11 Case"), under Chapter 11 of Title 11 of the United States Code, as amended and the rules and regulations promulgated thereunder (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

**WHEREAS**, SRAC is party to that certain indenture, dated as of October 1, 2002 (the "Indenture"), by and among SRAC, Sears, Roebuck and Co., a corporation organized and existing under the laws of the State of New York ("Sears"), and the Bank of New York Mellon Trust Company, N.A., as successor trustee to BNY Midwest Trust Company, as trustee;

**WHEREAS**, from time to time and pursuant to the Indenture, SRAC issued certain Medium Term Notes Series B debt obligations to some or all of the Other Debtors (all such Medium Term Notes Series B obligations, the "SRAC MTNs");

**WHEREAS**, from time to time SRAC issued certain intercompany debt obligations to some or all of the other Debtors (all Debtors except for SRAC being the "Other Debtors") pursuant to the terms of which SRAC owes money to some or all of the Other Debtors (all such debt obligations issued by SRAC and owing to any Other Debtor (including, without limitation, the obligations specified on Annex B hereto (the "Listed Obligations") and the SRAC MTNs), whether crystallized, contingent or otherwise and whether issued pursuant to the Indenture or otherwise, the "Intercompany Obligations");

**WHEREAS**, the Debtors filed their Emergency Motion for Order Approving the Sale of Medium Term Notes [Dkt. No. 642] in the Bankruptcy Court to sell certain of the SRAC MTNs, which was approved on November 19, 2018;

**WHEREAS**, all of the Other Debtors that are owners or holders in any fashion of the SRAC MTNs as of the date hereof wish to sell all of such SRAC MTNs to the Purchaser pursuant to this Agreement;

**WHEREAS**, SRAC wishes to enter into this Agreement and consummate the transactions contemplated hereby in order to, among other things, effect a waiver of the right to receive distributions with respect to certain SRAC MTNs; and

**WHEREAS**, the Purchaser desires to purchase the SRAC MTNs from the Other Debtors on

1

the terms and subject to the conditions set forth in this Agreement and pursuant to the Sale Order (as defined herein) in accordance with Sections 105 and 363 of the Bankruptcy Code.

**NOW**, **THEREFORE**, in consideration of the foregoing and the premises and the representations, warranties and agreements contained herein, the parties hereto agree as follows:

1.  Purchase of SRAC MTNs.  On the terms and subject to the conditions set forth in this Agreement, the Debtors shall sell, assign, transfer, convey and deliver to Purchaser, and Purchaser shall purchase and accept from the Debtors, free and clear of any lien, pledge, charge, security interest, claim, encumbrance, right of setoff, subrogation, equitization, recharacterization or any similar such right of any kind, to the extent set forth in the Sale Order (as defined below) all of each Debtor's right, title and interest in and to all of the SRAC MTNs set forth on Annex D hereto.

2.  Purchase Price. In consideration for its receipt of the SRAC MTNs and the other agreements contained herein, the Purchaser shall pay to the Debtors at the Closing the amount of $82,500,000 (the "Purchase Price").  The Purchase Price shall be paid by wire transfer of immediately available funds at the Closing to the account or accounts specified to the Purchaser by the Debtors.

3.  Continuing Obligations. The Purchaser and the Debtors hereby agree, on behalf of themselves and any successor, that with respect to all SRAC MTNs identified in Annex D as Continuing Obligations (such obligations being the "Continuing Obligations") the Purchaser retains all rights with respect thereto, including any rights of payment, distribution, voting or any other rights existing pursuant to the terms of such Continuing Obligations.

4.  Waived SRAC MTNs. Effective as of the Closing, the Purchaser and the Debtors hereby agree, on behalf of themselves and any successor, that with respect to all SRAC MTNs identified in Annex D hereto as Waived Obligations (the "Waived Obligations"), the Purchaser hereby irrevocably, automatically and permanently waives all rights to receive principal, interest, fees or other payments or distributions of any kind from the Debtors in respect of and solely with respect to such Waived Obligations (it being understood that nothing in this Agreement (including, without limitation, this section 4) shall impair, reduce or limit in any way any right of Purchaser with respect to any Continuing Obligations) and any transfer of any Waived Obligations shall be expressly subject to the terms of this Agreement.

5.  Representations and Warranties of the Debtors. The Debtors represent and warrant to the Purchaser, effective as of the date hereof, as follows:

    (a)    Due Authorization.  The Sale Order attached as Annex C hereto approves the transactions contemplated by this Agreement in accordance with Section 363 of the Bankruptcy Code, having been entered by the Bankruptcy Court on November 19, 2018 (the "Sale Order") and, therefore, this Agreement has

been duly and validly authorized, executed and delivered by the Debtors and constitutes a valid and binding agreement of the Debtors, enforceable against the Debtors in accordance with its terms. The Debtors hereby further agree that this Agreement shall constitute a post-petition administrative obligation of the Debtors in all respects.

(b)   <u>No Third Party Holders</u>.  To the best of the Debtors' knowledge, since the filing of the Debtors' SEC Form 10-Q for the second quarter of 2018, no SRAC MTN or Listed Obligation has been sold, transferred or assigned to any non-Debtor.

(c)   <u>Non-Disclosure</u>.  The Debtors have not taken any steps to cause Sears Reinsurance Inc. ("<u>Sears Re</u>") or any other party to list any of the debt obligations issued by SRAC which are currently held by Sears Re (the "<u>Sears Re Obligations</u>") for inclusion in any auction to be held by ISDA with regard to the credit default swaps referencing SRAC.

(d)   <u>Rights of Setoff</u>.  Except for the purchase and transfer of SRAC MTNs effected pursuant to section 1 of this Agreement, any transfer of Intercompany Obligations by any Debtor is, and shall continue to be, subject to any counterclaim, right of setoff, subrogation, equitization, recharacterization or any similar such right of any kind of SRAC against any of the Debtors and any affiliate thereof, including Sears Re.

(e)   <u>Existing Claims</u>.  The Debtors, including SRAC, are not aware of and do not intend to pursue any counterclaim, defense, lien, claim, charge, encumbrance, or right of setoff with respect to the Continuing Obligations being sold to Purchaser pursuant to section 1 of this Agreement.

(f)   <u>Non-Reliance</u>.  (i) Debtors are not relying on any disclosure or non-disclosure made or not made, or the completeness thereof, in connection with or arising out of the sale of the SRAC MTNs, and therefore the Debtors have no claims of any nature whatsoever against Purchaser with respect to any information in possession of Purchaser or any disclosure or failure to disclose information; (ii) the Debtors expressly acknowledge that if any information that is not known or otherwise made available to the Debtors were disclosed or made available to the Debtors, such information could foreseeably affect the Debtors' willingness to enter into this transaction and/or the price the Debtors would be willing to accept in connection with the sale; and (iii) Purchaser does not have any fiduciary relationship or contractual non-disclosure obligation to Debtors in respect of the SRAC MTNs.

5.   <u>Representations and Warranties of the Purchaser</u>. The Purchaser hereby represents and warrants to the Debtors as of the date hereof as follows:

(a)   <u>Due Organization</u>.  The Purchaser is duly organized and validly existing under the laws of the jurisdiction of its organization.

(b)   <u>Due Authorization; Binding Agreement</u>.  The Purchaser has full right, power

and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby.  This Agreement has been duly and validly authorized, executed and delivered by the Purchaser and (assuming due authorization, execution and delivery by the Debtors) constitutes the valid and binding obligation of the Purchaser enforceable against the Debtors in accordance with its terms.

(c)    <u>Investment Intent</u>.  The SRAC MTNs to be acquired by the Purchaser pursuant to this Agreement shall be acquired for the Purchaser's own account and not with a view to, or intention of, distribution thereof in violation of the Securities Act of 1933, as amended (the "<u>Securities Act</u>"), or any applicable state securities laws, and such SRAC MTNs shall not be disposed of in contravention of the Securities Act or any applicable state securities laws and will bear "144A-for-life legends".

(d)    <u>Sophisticated Investor</u>.  The Purchaser is a "qualified institutional buyer" as defined in Rule 144A under the Securities Act and an "accredited investor" as defined in Rule 501 under Regulation D of the Securities Act with extensive expertise and experience in financial and business matters and in evaluating private companies and purchasing and selling its securities.  The Purchaser has conducted and relied upon its own due diligence investigation of the Debtors and its own in-depth analysis of the merits and risks of the transactions contemplated herein in making its investment decision.

(e)    <u>Non-reliance</u>.  (i) Debtors may be, and the Purchaser is proceeding on the assumption that the Debtors are, in possession of or may have access to material, non-public information concerning the Debtors and affiliates and their respective securities (collectively, the "<u>Information</u>") which is not or may not be known to the Purchaser and that has not been and will not be disclosed to the Purchaser; (ii) Purchaser is not relying on any disclosure or non-disclosure made or not made (other than the terms of the auction contained in the BWIC issued by Jefferies for the sale of the SRAC MTNs as set forth on Annex E), or the completeness thereof, in connection with or arising out of the sale of the SRAC MTNs, and therefore the Purchaser has no claims of any nature whatsoever against Debtors with respect to the Information or any disclosure or failure to disclose information; (iii) Purchaser expressly acknowledges that if the Information that is not known or otherwise made available to Purchaser were disclosed or made available to Purchaser, such Information could foreseeably affect Purchaser's willingness to enter into this transaction and/or the price Purchaser would be willing to pay in connection with purchase; and (iv)  Debtors do not have any fiduciary relationship to Purchaser in respect of the SRAC MTNs.

6.    <u>Covenants</u>. The Debtors hereby covenant and agree (i) with respect to clauses (a)-(d), during the period from the date hereof to the conclusion of any auction to be held by ISDA with regard to credit default swaps referencing SRAC and the settlement of all transactions arising out of such auction and (ii) with respect to clause (e), with no date of termination, as follows:

(a)    Transfer.  No Debtor (or any affiliate thereof, other than Sears Re in the event that Sears Re is ordered to do so by a Bermuda Court Appointed Receiver appointed in a Bermuda Receivership; *provided* that the Debtors have not sought, or participated in effecting such order and the Debtors shall use commercially reasonable efforts to oppose any such action by any such Bermuda Court Appointed Receiver) shall sell, transfer or assign any Intercompany Obligation (including, without limitation, any SRAC MTN or Listed Obligation) to any non-Debtor.

(b)    Further Action.  The Debtors (i) shall not take any steps to cause Sears Re or any other party to list any Sears Re Obligations for inclusion in any auction to be held by ISDA with regard to the credit default swaps referencing SRAC, (ii) shall not disclose, or otherwise facilitate the disclosure of, the terms of any Sears Re Obligation unless otherwise required by the Bankruptcy Court and (iii) shall use commercially reasonable efforts to oppose any such action referenced in the preceding (i) or (ii) by any Bermuda Court Appointed Receiver.

(c)    Documentation of Existing Obligations.  The Debtors (i) shall not document in the form of a transferable obligation any obligation of SRAC to any other Debtor or Sears Re that has not already been documented prior to the date hereof and (ii) shall use commercially reasonable efforts to oppose any such action by any Bermuda Court Appointed Receiver.

(d)    Preservation of Claims.  The Debtors shall not waive any counterclaims, defenses, liens, claims, charges, encumbrances or rights of setoff that any Debtor may assert with respect to any obligations (other than the Continuing Obligations) owed by SRAC to any Debtor or any affiliate thereof, including Sears Re, including the Listed Obligations and any SRAC MTNs held by Sears Re, and will take all actions necessary to preserve and enforce such claims or rights.

(e)    Pursuit of Claims.  The Debtors shall not take any action to pursue any counterclaim, defense, lien, claim, charge, encumbrance, or right of setoff with respect to the Continuing Obligations being sold to Purchaser.

7.    Conditions to Each Party's Obligation to Effect the Closing.  The respective obligations of each party to effect the Closing hereunder shall be subject to the fulfillment at or prior to the Closing of the following conditions:

(a)    There shall not be in effect any preliminary or permanent injunction or other order or decree by any federal or state court or administrative agency having competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated in this Agreement; and

(b)    The Sale Order (i) shall not have been reversed or stayed at the time of Closing, and (ii) shall not be the subject of an appeal or motion for rehearing or new trial, provided however, that Purchaser, in its sole and absolute discretion, may elect to proceed with the Closing even if an appeal from or a

motion for rehearing or new trial on the Sale Order is pending.

8.    <u>General Provisions</u>.

(a)    <u>Amendments, Etc.</u> No amendment, modification, termination, or waiver of any provision of this Agreement shall be effective unless it shall be in writing and signed and delivered by the party sought to be bound and, if required, approved by the Bankruptcy Court, and then it shall be effective only in the specific instance and for the specific purpose for which it is given.

(b)    <u>Severability</u>.  Any term or provision of this Agreement which is invalid or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the remaining terms and provisions of this Agreement or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction.

(c)    <u>Time of Essence</u>.    Time is of the essence with regard to this Agreement and the transactions contemplated hereby.

(d)    <u>Governing Law</u>.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York.

(e)    <u>Entire Agreement</u>.  This Agreement embodies the entire agreement and understanding of the Purchaser and the Debtors with respect to the subject matter hereof and thereof, and supersedes all prior agreements or understandings, with respect to the subject matter of this Agreement.

(f)    <u>Specific Performance; Enforcement</u>.  Each of the parties hereto recognizes and acknowledges that a breach by it of any covenants or agreements contained in this Agreement will cause the other party to sustain damages for which it would not have an adequate remedy at law for money damages, and therefore, each of the parties hereto agrees that in the event of any such breach the aggrieved party shall be entitled to the remedy of specific performance of such covenants and agreements and injunctive and other equitable relief in addition to any other remedy to which it may be entitled at law or in equity.  The parties agree that they shall be entitled to enforce specifically the terms and provisions of this Agreement in addition to any other remedy to which they may entitled at law or in equity.

In addition, each of the parties hereto (i) agrees that any action related to or arising out of this Agreement or any of the transactions contemplated hereby shall be brought in the Bankruptcy Court, (ii) consents to the personal jurisdiction of the Bankruptcy Court in the event any action related to or arising out of this Agreement or any of the transactions contemplated hereby is brought, (iii) agrees that such party will not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from such court, (iv) consents to service of process in the manner set forth in section 8(f) of

6

this Agreement in connection with any action related to or arising out of this Agreement or any of the transactions contemplated hereby and (v) waives any right to trial by jury in any action related to or arising out of this Agreement or any of the transactions contemplated hereby.

(g)     <u>Counterparts; Facsimile</u>.  This Agreement may be executed in counterparts, all of which shall be considered one and the same agreement, and shall become effective when counterparts have been signed by each of the parties and delivered to the other parties, it being understood that all parties need not sign the same counterpart.  This Agreement may be executed by facsimile signatures of the parties hereto.

*[Signature page follows]*

**Cyrus Capital Partners, L.P.**, in its capacity as investment manager to and on behalf of certain managed funds, as Purchaser

By: _____

Name: Steve Freidheim

Title: Chief Investment Officer

[Signature page to Note Purchase Agreement]

**SEARS ROEBUCK ACCEPTANCE CORP.,** as a
Debtor

By: _Luke Valentino_____
    Name: Luke Valentino
    Title: Divisional Vice President, Deputy General
        Counsel + Corporate Secretary

**SEARS HOLDINGS CORPORATION,** as a Debtor,
on its own behalf, and on behalf of the Other Debtors
specified in Annex A hereto

By: _Luke Valentino_____
    Name: Luke Valentino
    Title: Divisional Vice President, Deputy
        General Counsel + Corporate Secretary

[Signature page to Note Purchase Agreement]

## Annex A

## Debtors

Kmart Holding Corporation;
Kmart Operations LLC;
Sears Operations LLC;
Sears, Roebuck and Co.;
ServiceLive Inc.;
SHC Licensed Business LLC;
A&E Factory Service, LLC;
A&E Home Delivery, LLC;
A&E Lawn & Garden, LLC;
A&E Signature Service, LLC;
FBA Holdings Inc.;
Innovel Solutions, Inc.;
Kmart Corporation;
MaxServ, Inc.;
Private Brands, Ltd.;
Sears Development Co.;
Sears Holdings Management Corporation;
Sears Home & Business Franchises, Inc.;
Sears Home Improvement Products, Inc.;
Sears Insurance Services, L.L.C.;
Sears Procurement Services, Inc.;
Sears Protection Company;
Sears Protection Company (PR) Inc.;
Sears, Roebuck de Puerto Rico, Inc.;
SYW Relay LLC;
Wally Labs LLC;
SHC Promotions LLC;
Big Beaver of Florida Development, LLC;
California Builder Appliances, Inc.;
Florida Builder Appliances, Inc.;
KBL Holding Inc.;
KLC, Inc.;
Kmart of Michigan, Inc.;
Kmart of Washington LLC;
Kmart Stores of Illinois LLC;
Kmart Stores of Texas LLC;
MyGofer LLC;
Sears Brands Business Unit Corporation;
Sears Holdings Publishing Company, LLC.;
Sears Protection Company (Florida), L.L.C.;
SHC Desert Springs, LLC;
SOE, Inc.;
StarWest, LLC;
STI Merchandising, Inc.;
Troy Coolidge No. 13, LLC;

BlueLight.com, Inc.;
Sears Brands, L.L.C.;
Sears Buying Services, Inc.;
Kmart.com LLC; and
Sears Brands Management Corporation.

## Annex B

### Listed Obligations

| | | |
|---|---|---|
| FIGI: BBG0013S7CD4 | Medium Term Intercompany Notes – Series I (2,000,000,000) | Maximum Maturity: 30 Years |
| FIGI: BBG0013SMLD7 | Medium Term Intercompany Notes – Series II (1,500,000,000) | Maximum Maturity: 30 Years |
| FIGI: BBG0013RQSG7 | Medium Term Intercompany Notes – Series III (2,000,000,000) | Maximum Maturity: 30 Years |
| FIGI: BBG0013RQSQ6 | Medium Term Intercompany Notes – Series IV (1,750,000,000) | Maximum Maturity: 30 Years |
| FIGI: BBG0013RQQR9 | Medium Term Intercompany Notes – Series V (1,850,000,000) | Maximum Maturity: 30 Years |
| FIGI: BBG0013RQRD2 | Medium Term Intercompany Notes – Series VI (1,000,000,000) | Maximum Maturity: 30 Years |
| FIGI: BBG0013RQRQ8 | Medium Term Intercompany Notes – Series VII (1,500,000,000) | Maximum Maturity: 30 Years |
| FIGI: BBG0013W7DC4 | Medium Term Intercompany Notes – Series NOTZ ($3,000,000,000) | Maximum Maturity: 30 Years |
| FIGI: BBG0013V2TZ1 | Commercial Paper – Program CP ($5,100,000,000) | Maximum Maturity: 30 Years |
| FIGI: BBG0013V2V59 | Commercial Paper – Program CPIB (Unlimited) | Maximum Maturity: 30 Years |

**<u>Annex C</u>**

**<u>Sale Order</u>**

[See attached.]

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
In re                                              :
                                                   :    **Chapter 11**
**SEARS HOLDINGS CORPORATION**, *et al.*,          :
                                                   :    **Case No. 18-23538 (RDD)**
                                                   :
            Debtors.[1]                            :    **(Jointly Administered)**
-----------------------------------------------------------------x

## ORDER AUTHORIZING DEBTORS TO SELL
## MEDIUM TERM NOTES

Upon the motion (the "**Motion**")[2] of Sears Holdings Corporation and its debtor

affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases

(collectively, the "**Debtors**"), pursuant to sections 105(a) and 363 of title 11 of the United States

Code (the "**Bankruptcy Code**"), and Rule 6004(a) of the Federal Rules of Bankruptcy

Procedures (the "**Bankruptcy Rules**"), for an order (a) granting expedited consideration of the

Motion's request for substantive relief and (b) authorizing, but not directing, the Debtors to sell

certain medium term notes, all as more fully set forth in the Motion; and the Court having

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); Sears, Roebuck de Puerto Rico, Inc. (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Sears Brands Business Unit Corporation (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); and Sears Brands Management Corporation (5365). The location of the Debtors' corporate headquarters is 3333 Beverly Road, Hoffman Estates, Illinois 60179.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

jurisdiction to decide the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the relief sought in the Motion having been provided in accordance with the Amended Case Management Order and under the circumstances, such notice having been adequate and appropriate under the circumstances, and it appearing that no other or further notice need be provided for the reasons stated by the Court at the November 13, 2018 hearing; and the Court having held hearings to consider the relief requested in the Motion on November 13, 2018 and November 19, 2018 (collectively, the "**Hearing**"); and upon the record of, and representations at, the Hearing, and all of the proceedings had before the Court; and the Court having determined that (i) the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, and (ii) the withdrawal of the objection of Cyrus Capital Partners, LP ("**Cyrus**") is based upon the provisions in this Order that have been negotiated at arms' length and in good faith between the Debtors and Cyrus to address issues raised in Cyrus' objection to the Motion; and there being no other objections to the Motion; and it appearing that the relief granted hereby is supported by a proper exercise of business judgment, provides a benefit to the Debtors and their estates, and is in the best interests of the Debtors, their estates, their creditors, and all parties in interest while sufficiently protecting SRAC; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted to the extent set forth herein.

2.      The Motion's request for expedited consideration is granted.

2

3.      The Debtors are authorized, but not directed, in consultation with the Creditors' Committee, to sell the MTNs to the party or parties that provide the highest or best offer and to deposit all net proceeds of the sale(s) into the Winddown Account, as provided in the DIP Orders (as defined below), *provided* that such authorization to sell the MTNs shall terminate at the close of business one business day following the date of the Auction and any further authorization to sell all or any of the MTNs will be subject to Court approval.

4.      In light of the fact that the sale of the MTNs and the deposit of the proceeds into the Winddown Account may affect the assets and liabilities of the respective Debtors, in connection with the chapter 11 plan process, the Debtors, the Creditors' Committee, and the DIP ABL Agents and the Prepetition ABL Agents (each as defined in the *Interim Order (I) Authorizing the Debtors to (A) Obtain Post-Petition Financing, (B) Grant Senior Secured Priming Liens and Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief*, dated October 16, 2018 (ECF No. 101)) will agree upon a true-up mechanism to ensure that no Debtor's estate or creditors is adversely affected as a result of the sale of the MTNs, the deposit of the proceeds therefrom, subject to paragraph 4 hereof, into the Winddown Account or the use of such proceeds in accordance with this Order, which true-up mechanism will be subject to approval by the Court.  In the event that the foregoing parties cannot agree upon a true-up mechanism, any dispute will be resolved by the Court.

5.      To the extent that the Debtors sell the MTNs, Jefferies may deduct the Jefferies Brokerage Fee (as modified on the record at the Hearing to a 1.75% fee) from the gross proceeds of such sale.

6.      Pursuant to section 363(f) of the Bankruptcy Code, the MTNs sold by the applicable Debtors shall be sold free and clear of any and all liens, claims, and encumbrances (including, without limitation, any and all "claims" as defined in section 101(5) of the Bankruptcy Code) (collectively, the "**Liens and Claims**"), with such Liens and Claims, if any, to attach to the proceeds of such assets with the same validity and enforceability, to the same extent, subject to the same defenses, and with the same amount and priority as they attached to such assets immediately before the closing of the applicable sale; *provided*, however, that the MTNs are not being sold free and clear of any Liens or Claims of SRAC, including, without limitation, any counterclaim, defense or right of setoff, held or that may be asserted by SRAC or its estate, and nothing in this Order shall impair or prejudice in any way any rights, claims, or defenses that SRAC or its estate may have in connection with the MTNs.

7.      Any entity that purchases MTNs from the Debtors pursuant to the authority granted in this Order shall be deemed to have purchased the MTNs in good faith and shall be entitled to the protections set forth in section 363(m) of the Bankruptcy Code; *provided*, however, that notwithstanding the foregoing, the MTNs are not being sold free and clear of any liens charges, claims, or encumbrances of SRAC, including, without limitation, any counterclaim, defense or right of setoff, held or that may be asserted by SRAC or its estate, and nothing in this Order shall impair or prejudice in any way any rights, claims, or defenses that SRAC or its estate may have in connection with the MTNs, and *provided*, further, that nothing contained in this Order shall waive any rights of the Debtors, the Creditors' Committee or any other party or governmental entity to the extent it is determined that a party engaged in inappropriate conduct with respect to the transactions contemplated by this Order.

WEIL:\96797319\3\73217.00044

8.    Notwithstanding anything contained in the Motion or this Order to the contrary, any payment made or action taken by any of the Debtors pursuant to the authority granted herein, as well as the exercise of any and all other rights and authorizations granted or approved hereunder, shall be subject in all respects to, as applicable:  (i) the orders approving the Debtors' use of cash collateral and/or post-petition debtor-in-possession financing facilities (collectively, the "**DIP Orders**"), (ii) the other documentation governing the Debtors' use of cash collateral and postpetition financing facilities, and (iii) the Approved Budget (as defined in the DIP Orders).

9.    To the extent there is any inconsistency between the terms of any of the DIP Orders or this Order, the terms of the DIP Order (or DIP Orders, as applicable) shall control.

10.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order.

11.    The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

12.    To the extent necessary to permit the sale of the MTNs, the automatic stay in effect in SRAC's case under section 362(a) of the Bankruptcy Code is lifted pursuant to section 362(d)(1) of the Bankruptcy Code.

13.    Any stay of this Order under Fed. R. Bankr. P. 6004(f) is waived, for cause, and this Order is effective immediately upon its entry.


Dated:  November 19, 2018
         White Plains, New York

                                   /s/ Robert D. Drain _____
                                   THE HONORABLE ROBERT D. DRAIN
                                   UNITED STATES BANKRUPTCY JUDGE

5

**<u>Annex D</u>**

**<u>SRAC MTNs</u>**

[See attached.]

Annex D

## **"Continuing Obligations"**

| Note no | cusip | amount | issue date | maturity |
|---------|-------|--------|------------|----------|
| FLR-80 | 812404CN9 | 122,500,000 | 1/28/2013 | 1/28/2020 |
| FLR-81 | 812404BS9 | 82,800,000 | 1/31/2013 | 1/31/2020 |
| FLR-79 | 812404CM1 | 45,946,000 | 1/24/2013 | 1/24/2020 |

## **"Waived Obligations"**

| Note no | cusip | amount | issue date | maturity |
|---------|-------|--------|------------|----------|
| FLR-78 | 812404CL3 | 70,000,000 | 1/16/2013 | 1/16/2020 |
| FLR-84 | 812404BT7 | 11,500,000 | 3/26/2013 | 3/26/2020 |
| FLR-88 | 812404CP4 | 90,000,000 | 7/25/2013 | 10/25/2018 |
| FLR-91 | 812404BV2 | 48,000,000 | 7/26/2013 | 7/27/2020 |
| FLR-96 | 812404CK5 | 50,000,000 | 8/29/2013 | 11/29/2018 |
| FLR-98 | 812404BP5 | 28,500,000 | 11/1/2013 | 11/1/2018 |
| FLR-99 | 812404CE9 | 75,000,000 | 1/9/2014 | 1/9/2019 |
| FLR-107 | 812404BQ3 | 12,500,000 | 1/31/2014 | 3/5/2019 |
| FLR-108 | 812404BX8 | 3,000,000 | 1/31/2014 | 3/5/2019 |
| FLR-110 | 812404CJ8 | 18,000,000 | 5/22/2014 | 5/22/2019 |
| FLR-111 | 812404BY6 | 4,800,000 | 5/29/2014 | 5/29/2019 |
| FLR-112 | 812404CF6 | 19,500,000 | 7/18/2014 | 7/18/2019 |
| FLR-114 | 812404BR1 | 22,300,000 | 8/1/2014 | 8/1/2019 |
| FLR-118 | 812404BZ3 | 2,250,000 | 1/21/2015 | 1/21/2020 |
| FLR-119 | 812404CH2 | 36,100,000 | 1/22/2015 | 1/22/2019 |
| FLR-120 | 812404CG4 | 33,000,000 | 1/22/2015 | 1/22/2020 |
| FLR-122 | 812404CA7 | 10,000,000 | 5/26/2015 | 5/13/2020 |
| FLR-123 | 812404BU4 | 30,300,000 | 5/27/2015 | 5/13/2020 |
| FLR-124 | 812404CB5 | 5,900,000 | 9/21/2015 | 9/21/2020 |
| FLR-125 | 812404CC3 | 33,000,000 | 1/22/2016 | 1/22/2021 |
| FLR-126 | 812404BW0 | 20,200,000 | 4/28/2016 | 4/28/2021 |
| FLR-127 | 812404CD1 | 5,600,000 | 5/27/2016 | 5/25/2021 |

**Annex E**

**Auction Terms**

[See attached.]

- Notes will be 144A for life
- Buyers will be asked to affirm QIB status
- Each potential buyer must submit their own bid
- SRAC confirms that the Notes were issued to the applicable Debtor/Seller for borrowed money and that, up until the commencement of its chapter 11 case, SRAC made regular interest payments on the Notes to the applicable Debtor/Seller.
- Further, Sears Holdings Corporation and its affiliated Debtors confirm that SRAC is not aware of, and does not intend to pursue, and hereby quitclaims any counterclaim, defense, lien, claim, charge, encumbrance, or right of setoff with respect to any purchaser or transferee of the Notes. Attached please find the indenture governing the notes as well as the website for additional information.

https://searsholdings.com/invest/financial-transactions/sears-roebuck-acceptance-corp-medium-term-notes-series-b-documentation